UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

KIM VASQUEZ,

Plaintiff,

Hon. Henry Pitman, Magistrate

-against-

Case No. 13 CV 5632 (HBP)

THE COUNTY OF ROCKLAND, SGT. KARL MUELLER, SGT. JOHN KLEBER, CORRECTION OFFICER JOHN KEZEK and CORRECTION OFFICER PAUL ORBACZ in their individual and official capacities as Correction Officers employed by the County of Rockland,

Defendants.

-----------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**CATANIA, MAHON, MILLIGRAM & RIDER, PLLC**
*Attorneys for Defendant*
One Corwin Court, P.O. Box 1479
Newburgh, New York 12550
Tel. No. 845-565-1100

OF COUNSEL: ARI I. BAUER, Esq.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... iv-vii

PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 1

PROCEDURAL POSTURE .......... 4

LEGAL STANDARD .......... 5

POINT I .......... 6

PLAINTIFF'S CLAIM OF EXCESSIVE FORCE SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILED AS TO BOTH CONDITIONS NECESSARY FOR SUCH A CLAIM, AND HIS INJURIES WERE NOT REPUGNANT TO THE CONSCIENCE OF MANKIND

POINT II .......... 9

DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE DEFENDANTS' QUALIFIED IMMUNITY REMAINS ENTIRELY APPLICABLE

POINT III .......... 12

PLAINTIFF FAILED TO ESTABLISH ANY GENUINE ISSUE OF MATERIAL FACT SHOWING RETALIATION UNDER §1983

POINT IV .......... 14

PLAINTIFF'S FREE EXERCISE CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFF'S RELIGION WAS NOT SUBSTANTIALLY BURDENED AND DEFENDANTS' CONDUCT WAS REASONABLY RELATED TO A LEGITIMATE PENOLOGICAL INTEREST

POINT V .......... 14

PLAINTIFF'S CLAIMS AGAINST DEFENDANT, THE COUNTY OF ROCKLAND, FOR NEGLIGENT HIRING, TRAINING, AND SUPERVISION SHOULD BE DISMISSED BECAUSE COUNTY OFFICERS WERE ACTING WITHIN SCOPE OF EMPLOYMENT



CATANIA, MAHON, MILLIGRAM & RIDER, PLLC
P.O. BOX 1479 • NEWBURGH, N.Y. 12551 • (845) 565-1100

POINT VI........................................................................................................19

PLAINTIFF'S CLAIMS AGAINST DEFENDANT, THE COUNTY OF ROCKLAND, UNDER RESPONDEAT SUPERIOR MUST BE DISMISSED BECAUSE A MUNICIPALITY CANNOT BE HELD LIABLE UNDER §1983 ON A THEORY OF RESPONDEAT SUPERIOR

CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

Akili v. Ward, 547 F. Supp. 729, 733–34 (N.D.N.Y. 1982)........11

Anderson v. Creighton, 483 U.S. 635, 640 (1987)........11

Argentine v. McGinnis, 311 F. Supp. 134, 138 (S.D.N.Y. 1969)........11

Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983)........19

Boyd v. Selmer, 842 F. Supp. 52, 56–57 (N.D.N.Y. 1994)........11

Brown v. State, 814 N.Y.S.2d 492, 507 (N.Y. Ct. Cl. 2006), aff'd, 841 N.Y.S.2d 698 (N.Y. App. Div. 3d Dept. 2007)........17

Candelaria v. Coughlin, 787 F.Supp. 368, 374 (S.D.N.Y.), aff'd, 979 F.2d 845 (2d Cir. 1992)........ 7, 8

Clark–Fitzpatrick, Inc. v. Long Island Rail Road, 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190)........17

Cunningham v Rodriguez, 01 CIV. 1123 (DC), 2002 WL 31654960, at *6 [SDNY Nov. 22, 2002] ......7

Daniels v. Loizzo, 174 F.R.D. 295, 299 (S.D.N.Y. 1997)........17

DeArmas v. Jaycox, No. 92 CIV. 6139 (LMM), 1993 WL 37501, at *4 (S.D.N.Y. Feb. 8, 1993), aff'd, 14 F.3d 591 (2d Cir. 1993)........7

Eckardt v. City of White Plains, 930 N.Y.S.2d 22 (N.Y. App. Div. 2d Dept. 2011)........18

Gabai v. Jacoby, 800 F.Supp. 1149, 1155 (S.D.N.Y. 1992) ........8

Green v. City of New York, 465 F.3d 65, 80 (2d Cir. 2006) ........19

Greene v. Mazzuca, 485 F.Supp.2d 447, 451 (S.D.N.Y.2007)........8

Grund v. Delaware Charter Guarantee & Trust Co., 788 F. Supp. 2d 226, 243 (S.D.N.Y. 2011)......16, 17

Hamilton v Countant, 13-CV-669(RA), 2016 WL 881126 at *3 (S.D.N.Y. Mar. 1, 2016)........6, 14

Headley v. Fisher, No. 06 CV 6331, 2008 WL 1990771, at *14 (S.D.N.Y. May 7, 2008)........................8

Henry v Dinelle, 929 F.Supp.2d 107, 123–24 (N.D.N.Y. 2013), affd, 557 Fed.Appx. 20 (2nd Cir. 2014)........................10, 11

Hudson v. McMillian, 503 U.S. 1, 7 (1992)........................6, 7

Hunter v. Bryant, 502 U.S. 224, 227 (1991)........................10

James v. Phillips, No. 05 Civ. 1539 (PKC), 2008 WL 1700125, at *4–*5 (S.D.N.Y. Apr. 9, 2008)........................8

Karoon v. New York City Transit Auth., 241 A.D.2d 323, 659 N.Y.S.2d 27, 29 (N.Y. App. Div. 1st Dept. 1997)........................17

Kent v. Katz, 125 Fed.Appx. 334, 335 (2nd Cir. 2005)........................10

Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015)........................6

Malley v Briggs, 475 US 335, 335 (1986)........................11

Messerschmidt v. Millender, 132 S. Ct. 1235, 1244–45 (2012)........................10

Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978)........................19

Moran v. Livingston, 155 F. Supp. 3d 278 (W.D.N.Y. 2016)........................6

Murray v. Johnson No. 260, 367 Fed.Appx. 196, 198 (2d Cir.2010)........................6, 7

Parris v. New York State Dep't Corr. Servs., 947 F. Supp. 2d 354, 364 (S.D.N.Y. 2013)........................19

Pearson v. Callahan, 129 S.Ct. 808, 817 (2009)........................10

Perry v. Burger King Corp., 924 F.Supp. 548, 552 (S.D.N.Y.1996)........................17

Perry v. Stephens, 659 F. Supp. 2d 577, 581 (S.D.N.Y. 2009)........................6, 7

Powlette v Morris, 13 CIV. 7378 (KPF), 2016 WL 3017396, at *11 (S.D.N.Y. May 23, 2016)........................10

O'Lone v Estate of Shabazz, 482 US 342, 348 (1987)........................14

Ramrattan v Fischer, 13 CIV. 6890 KPF, 2015 WL 3604242, at *6 (S.D.N.Y. June 9, 2015)........................14

Roberts v. C-73 Med. Dir., 1:14-CV-5198-GHW, 2015 WL 4253796, at *3, fn. 3 (S.D.N.Y. July 13, 2015) ....................6

Sharapata v. Town of Islip, 56 N.Y.2d 332, 452 N.Y.S.2d 347, 437 N.E.2d 1104....................17

Sprau v. Coughlin, 997 F.Supp. 390, 394 (W.D.N.Y.1998)....................8

Stephenson v. Doe, 332 F.3d 68, 77 (2nd Cir. 2003)....................11

Tafari v McCarthy, 714 F.Supp.2d 317, 341 (N.D.N.Y. 2010)....................7, 8, 10, 12

Thompson v. City of New York, 23 N.Y.S.3d 839, 856 (N.Y. Sup. Ct. 2015)....................17

Turner v Sidorowicz, 12-CV-7048 (NSR), 2016 WL 3938344, at *4 (S.D.N.Y. July 18, 2016)........12,14

United States v Walsh, 194 F3d 37, 49 (2nd Cir. 1999)....................6, 7

Vann v Fischer, 11 CIV. 1958 KPF, 2014 WL 4188077 at *4–6 (S.D.N.Y. Aug. 25, 2014), reconsideration denied, 11 CIV. 1958 KPF, 2015 WL 105792 (S.D.N.Y. Jan. 7, 2015)....................5, 14, 15

Whitley v. Albers, 475 U.S. 312, 320–21 (1986)....................7, 11

Williams v Leonard, 9:11-CV-1158 TJM, 2015 WL 3536733, at *10–11 (N.D.N.Y. Mar. 19, 2015), report and recommendation adopted in part, rejected in part, 9:11-CV-1158, 2015 WL 3544879 (N.D.N.Y. June 4, 2015)....................15

**Statutes**

42 U.S.C. §1983....................3, 4, 12, 16, 19

**Rules**

Fed. R. Civ. P. 56(a)....................1, 5, 20



CATANIA, MAHON, MILLIGRAM & RIDER, PLLC
P.O. BOX 1479 • NEWBURGH, N.Y. 12551 • (845) 565-1100

## PRELIMINARY STATEMENT

Defendants, the County of Rockland (the "County"), Sgt. Karl Mueller, Sgt. John Kleber, Correction Officer John Kezek, and Correction Officer Paul Orbacz (the "County Officers") (collectively referenced as "Defendants"), move this Court for an order, pursuant to Rule 56(a), dismissing Plaintiff's, Kim Vasquez ("Plaintiff"), complaint in its entirety as agents all Defendants, and for such other and further relief deemed just and proper. Plaintiff's complaint stems from a K-9 search of his belongings while an inmate at Rockland County Correctional Facility and an alleged assault of Plaintiff by Defendants. This motion is based on the grounds that Plaintiff does not have any claims against Defendants as a matter of law.

## STATEMENT OF FACTS

According to Plaintiff, in about 2009, he was given an opportunity to enroll in a Drug Treatment Alternative-to-Prison program ("DTAP") after being charged with drug possession and alcohol related offenses. (Ex. "H", p. 12, ln. 15-22). In an attempt to avoid prison time, Plaintiff pled guilty to a felony, and started DTAP at a halfway house. (Id. at p. 13, ln. 3-15). Plaintiff was in the final stage of the program when he purportedly got into a verbal altercation with a DTAP peer. (Id. at ln. 11-22). While Plaintiff was not charged with any new offenses for the altercation, Plaintiff was committed into Rockland County Correctional Facility for about fifty-eight (58) days. (Ex. "H", p. 43, ln. 19-21).

On July 14, 2012, at about 2:20PM, and about forty (40) days into Plaintiff's incarceration, a K-9 Team searched a multi-unit housing area within the Rockland County Correctional Facility for narcotics. (Ex. "E"; "H", p. 43-44). All inmates were removed from the housing area prior to and during the search. At that time, Plaintiff was housed, along with his belongings, within the searched area (Ex. "H", p.16, ln. 14-16).

Plaintiff alleges that when he returned to his living space, he noticed that his crackers appeared to have bite marks as if an animal bit the packaging. (Ex. "F", p.32, ln. 6-17; Ex. "H", p. 20, ln. 2-18). According to Plaintiff, his religion requires that he and his belongings be clean before praying. (Id. at p. 33, ln. 16-25). This religious precept is known as "ablution." (Ex. "F", p.32, ln. 6-17). Plaintiff testified that he did not know how to properly achieve ablution for the items that came in contact with a dog despite admitting to owning and interacting two dogs before the incident giving rise to this matter. (Id. at p. 41, ln. 21-25; p.116, ln. 11-14; p. 118, ln. 2-6). Nevertheless, Plaintiff admitted that he never found out whether a dog did in fact come in contact with his food and any of his belongings. (Ex. "H", p. 20-21, ln. 22-1).

Plaintiff approached an officer about whether the dog came in contact with his belongings, and then Plaintiff returned to his belongings. (Id. at p. 20, ln. 2-18). Believing that a dog came in contact with his food, Plaintiff claims he placed the crackers on the floor near his living space. (Ex. "F", p.43, ln. 4-9). Soon thereafter, Plaintiff asserts that another inmate began to kick the crackers, and eventually this other inmate kicked the crackers out into the hallway. (Id. at p.43, ln. 22; p. 44, ln. 2-9; Ex. "H", p. 23, ln. 2-16). Subsequently, Plaintiff asserts that Sergeant Muller and some three or four other officers, which Plaintiff does not know their names, came into the housing area, handcuffed Plaintiff, and escorted Plaintiff out of the housing area for causing a disturbance with his crackers. (Ex. "F" at p. 50, ln. 7-21; Ex. "H", p. 26, 13-16, p. 35, ln.7-9).

Plaintiff testified that Sergeant Muller and the other officers escorted Plaintiff to a holding tank after allegedly hitting Plaintiff's head on about two doors, that he could recall, on the way to the tank. (Ex. "F" at p. 55, ln 1-5; p. 65, ln. 15-25; Ex. "H", p. 35, ln. 7-9). While in the holding tank, Plaintiff testified that he attempted to talk to the officers while standing up. (Ex. "F", p. 66, ln. 15-25). Plaintiff

averred that Sergeant Muller told him to sit down and subsequently planted his nails in Plaintiff's chest and made him sit down. (Id. at p. 66, ln. 15-25; p. 67, ln. 2-5).

In his Complaint, Plaintiff alleges that the County Officers were all aware that Plaintiff is a Muslim, and knew of the additional cleansing requirements needed to attain ablution if a dog came in contact with him or his clothing. (Ex. "B", ¶ 26-27). Plaintiff further alleges that the County Officers were aware of a previous lawsuit Plaintiff had filed against the County in which Plaintiff also alleged religious discrimination.[1] (Ex. "B", ¶ 27; "H", p. 11, ln. 12-21). Plaintiff alleges that in retaliation for exercising his First Amendment rights in bringing this prior lawsuit, the County Officers had a dog search his belongings. (Ex. "B", ¶ 28). However, at his Deposition, Plaintiff testified that he has no reason to believe that the County Officers knew about achieving ablution or cleaning items that come in contact with dogs. (Ex. "F", p.43, ln. 8-14). In fact, Plaintiff admitted that he actually had no idea what the County Officers knew or did not know, nor their intentions. (Id. at p.45, ln. 15-18; p. 46, ln. 12-16). He further testified that no officers mentioned anything about Plaintiff's religion at any point in time. (Ex. "H", p. 37, ln. 2-4).

Plaintiff further alleges that each of the County Officers handcuffed him, bent and twisted his wrists, and while escorting him to the holding tank rammed his head into a steel door. (Ex. "B", ¶ 30-31) Plaintiff claims that the County Officers assaulted him and battered him and denied him medical treatment, thereby violating his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments pursuant to §1983. (Ex. "B", ¶ 46 & 50). Nevertheless, Plaintiff received medical attention in response to his alleged injuries the very same day. (Ex. "F", p. 74, ln. 12-23). Furthermore, Plaintiff received an

[1] Plaintiff testified that this prior lawsuit against the County involved an incident in which a chaplain employed by the County at the Rockland County Correctional Facility disbursed inflammatory religious pamphlets among inmates. "H", p. 11, ln. 12-21.

over-the-counter pain medication for his head and no treatment was necessary for the scratches on his chest. (Id. at p. 74, ln. 14-25; p. 76, ln. 4-11).

After leaving the holding tank, Plaintiff was escorted to an isolated cell for the remainder of his time at the facility. (Ex. "H", p. 42, ln. 14-21). As a result of the alleged incident, Plaintiff filed a grievance with the New York State Commission of Correction. (Ex. "F", p. 62, ln. 13-24; Ex. "I"). The grievance was duly investigated and ultimately, the complaint was deemed unsubstantiated and denied. (Ex. "J").

As against the County, Plaintiff alleges State law claims that 1) the County is vicariously liable, under a theory of *respondeat superior*, for the intentional torts committed by County Officers; and 2) the County negligently trained, hired, supervised, and controlled its officers. Ex. "B," p. 6-8. While Plaintiff does not directly assert a §1983 claim against the County, Plaintiff's claim for vicarious liability is for the intentional torts allegedly committed in violation of §1983. Id., ¶¶ 46, 50.

## PROCEDURAL POSTURE

Defendants removed this case from Supreme Court, County of New York to this Federal Court on August 12, 2013. (Dkt. No. 1). On September 16, 2013, Defendants filed an answer to Plaintiff's Complaint. (Dkt. No. 8 & 9). On December 2, 2013, Plaintiff filed an Amended Complaint, alleging various claims against the County and County Officers. (Dkt No. 12). Defendants subsequently filed an Answer to Plaintiff's Amended Complaint. (Dkt No. 15 & 16). On September 29, 2016, Plaintiff's deposition was taken at the Mid-State Correctional Facility. (Ex. "F"). All discovery was completed by October 3, 2016.

Pursuant to a Pretrial Scheduling Order issued by this Court, dispositive motions were to be submitted on or before December 16, 2016. (Dkt. No. 79). However, on or about November 11, 2016, Plaintiff moved to amend his Complaint by letter motion to the Court. This letter motion was ultimately withdrawn by Plaintiff pursuant to a digitally recorded conference call before the Court having been held on November 27, 2017. By Order, dated December 1, 2017, this Court ordered that dispositive motions be served and filed no later than January 19, 2018. (Dkt. No. 95). Defendants now make this timely Motion for Summary Judgment in accordance with the Federal Civil Rules and the Local Civil Rules.

## LEGAL STANDARD

"Under Fed.R.Civ.P. 56(a), summary judgment may be granted only if all the submissions taken together 'show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" Vann v Fischer, 11 CIV. 1958 KPF, 2014 WL 4188077 at *4–6 (S.D.N.Y. Aug. 25, 2014), reconsideration denied, 11 CIV. 1958 KPF, 2015 WL 105792 (S.D.N.Y. Jan. 7, 2015) (citations omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Id. at 5. A fact is "material" if it might affect the outcome of the suit under the governing law," and is genuinely in dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial" using affidavits or otherwise, and cannot rely on the "mere allegations or denials" contained in the pleadings. Id.

A *pro se* litigant must still be held to the normal requirements of summary judgment, and "bald assertion[s]," unsupported by evidence, will not overcome a motion for summary judgment. Id. at 6.

The court cannot credit a *pro se* plaintiff's merely speculative or conclusory allegations. Hamilton v Countant, 13-CV-669(RA), 2016 WL 881126 at *3 (S.D.N.Y. Mar. 1, 2016).

Based on the arguments set forth below, it is respectfully submitted that the Defendants have made a prima facie case entitling them to summary judgment, and dismissal of all claims asserted in their entirety.

## ARGUMENT

## POINT I

## PLAINTIFF'S CLAIM OF EXCESSIVE FORCE SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILED TO SHOW BOTH CONDITIONS NECESSARY FOR SUCH A CLAIM, AND HIS INJURIES WERE NOT REPUGNANT TO THE CONSCIENCE OF MANKIND

Under the Eighth Amendment, inmates have a right to be free from wanton, malicious or sadistic infliction of pain at the hands of prison officials. Perry v. Stephens, 659 F. Supp. 2d 577, 581 (S.D.N.Y. 2009) (citations omitted). Other than for pretrial detainees,[2] there are two conditions that must be met in order to establish a constitutional claim in the prison context—a subjective condition and the other objective. United States v Walsh, 194 F3d 37, 49 (2nd Cir. 1999) (referencing Hudson v McMillian, 503 U.S. 1 (1992)).

"First, the subjective requirement is satisfied if the defendant has a sufficiently culpable state of mind, shown by actions characterized by wantonness." Walsh, supra, at 49-50 (citations and internal

[2] While the Supreme Court in Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015) held that pretrial detainees asserting excessive use of force claims under the Fourteenth Amendment need only meet the objective condition, and not the subjective standard, the Second Circuit and lower courts within its jurisdiction continue to abide by Second Circuit precedent requiring subjective and objective criteria when the plaintiff is a convicted prisoner. Roberts v. C-73 Med. Dir., 1:14-CV-5198-GHW, 2015 WL 4253796, at *3, fn. 3 (S.D.N.Y. July 13, 2015); Moran v Livingston, 155 F Supp 3d 278, 287 [WDNY 2016]; Murray v. Johnson No. 260, 367 Fed.Appx. 196, 198 (2d Cir.2010). Murray v Johnson NO. 260, *supra*, remains good law with respect to convicted prisoners. Plaintiff, being a prisoner convicted of a felony, must establish such subjective and objection criteria in order to prevail on an excessive use of force claim.

quotations omitted. A defendant could overcome this requirement by establishing that the force was applied in good faith in an effort to maintain or restore discipline. Whitley v. Albers, 475 U.S. 312, 320–21 (1986); see Cunningham v Rodriguez, 01 CIV. 1123 (DC), 2002 WL 31654960, at *6 [SDNY Nov. 22, 2002]; Murray v. Johnson No. 260, 367 Fed.Appx. 196, 198 (2d Cir.2010).

Second, it must be shown that the deprivation alleged is objectively sufficiently serious or harmful, and not *de minimis*. Walsh, supra, at 50 (citing Hudson, supra). "The Eighth Amendment's prohibition of cruel and usual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Tafari v McCarthy, 714 F.Supp.2d 317, 341 (N.D.N.Y. 2010) (citation omitted).

The question becomes what actions are considered *de minimis*. Not every push, shove, or even malevolent touch by a prison guard violates the Eight Amendment or gives rise to a federal cause of action. Perry, 659 F.Supp.2d at 582. For example, in Perry, *supra*, the court noted that slapping an inmate across the face several times and choking the inmate after the inmate attempted to kick the officer is not the force "of a sort repugnant to the conscience of mankind. Id. at 582-83. The court highlighted that the inmate only suffered, at most, a small bruise and minor pain that abated after about four days, and these minimal injuries were insufficient to satisfy the objective prong for claims of Eight Amendment violations. Id. In DeArmas v. Jaycox, the court held that plaintiff's allegations that he was punched in the arm and kicked in the leg was *de minimus*, and the allegations, taken as true, do not rise to level necessary to maintain an Eight Amendment claim. DeArmas v. Jaycox, No. 92 CIV. 6139 (LMM), 1993 WL 37501, at *4 (S.D.N.Y. Feb. 8, 1993), aff'd, 14 F.3d 591 (2d Cir. 1993). In Candelaria v. Coughlin, the court held that pressing a first against an inmate's neck causing him to lose

breath was *de minimis* and insufficient to constitute an Eighth Amendment violation. Candelaria v. Coughlin, 787 F.Supp. 368, 374 (S.D.N.Y.), aff'd, 979 F.2d 845 (2d Cir. 1992).

It is well settled that a plaintiff's injuries must be sufficiently serious to constitute an Eighth Amendment violation. Sprau v. Coughlin, 997 F.Supp. 390, 394 (W.D.N.Y.1998) (finding de minimis use of force where inmate was grabbed from behind the neck and hit several times across the neck, face and eye, resulting in small bump under inmate's eye); James v. Phillips, No. 05 Civ. 1539 (PKC), 2008 WL 1700125, at *4–*5 (S.D.N.Y. Apr. 9, 2008) (finding de minimis use of force when prison guard shoved inmate into a door which resulted in swelling of inmate's chin); Greene v. Mazzuca, 485 F.Supp.2d 447, 451 (S.D.N.Y.2007) (citation omitted) (holding that yelling, spitting at and threatening an inmate do not "rise to the level at which prevailing doctrine sets the constitutional bar to establish cruel and unusual punishment"); Headley v. Fisher, No. 06 CV 6331, 2008 WL 1990771, at *14 (S.D.N.Y. May 7, 2008) (holding that spitting in plaintiff's face, slapping and pushing twice did not give rise to the claim of excessive force). Tafari v. McCarthy, 714 F. Supp. 2d at 352 ("Generally, courts in this Circuit have not viewed bruises and other superficial injuries as 'serious" injuries.'") (citing Gabai v. Jacoby, 800 F.Supp. 1149, 1155 (S.D.N.Y. 1992)).

In this case, the County Officers interactions with Plaintiff cannot reasonably be considered malicious or sadistic. The County Officers applied force in good faith in an effort to maintain discipline. Even if the County Officers accidentally hit Plaintiff's head on a door as he was being transported or scratched Plaintiff's chest when ordering him to sit down, the County Officers were simply enforcing an order to which Plaintiff did not obey, and there is simply no evidence indicating an intent to maliciously or wantonly inflict harm upon Plaintiff. Moreover, Plaintiff admitted during his deposition that he does

not even know what the County Officers' intentions were. (Ex. "F", p. 46, ln. 12-16). Thus, the subjective condition in order establish the excessive force claim cannot be satisfied.

Furthermore, the objective condition for excessive force also cannot be satisfied because Plaintiff's injuries were *de minimis* and not repugnant to the conscience of mankind. Even if Plaintiff's allegations are taken as true, Plaintiff would have suffered minor scratches on his chest, and minor bruised bump(s) on his head as he was being transported to a secure location. Notwithstanding the minor scrapes alleged, Plaintiff's scratches on his chest did not become infected or require any stitches, and Plaintiff did not suffer any permanent or serious physical injuries. In fact, Plaintiff's scratches did not require any medical attention at all. Additionally, Plaintiff even admits that his current back pain is probably not related to the alleged interaction with County Officers (Ex. "F", p. 110, ln. 12-22), and there is no medically objective evidence to establish that he sustained a concussion.

Ultimately, there are no genuine issues of material fact requiring further deliberation. The alleged conduct giving rise to Plaintiff's purported injuries was not repugnant to the conscience of mankind or more than *de minimis* in nature. The County Officers' actions were clearly in furtherance of a penological interest—detaining inmates and maintaining order among prisoners who may not obey orders. Therefore, as a matter of law, there can be no claim for excessive force under the Eighth Amendment, and this Court should dismiss this claim in its entirety.

## POINT II

## DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE DEFENDANTS' QUALIFIED IMMUNITY REMAINS ENTIRELY APPLICABLE

Assuming, *arguendo*, that this Court finds a triable question of material fact as to the Eighth Amendment claim, Defendants are still entitled to qualified immunity. "[Q]ualified immunity 'gives

government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.'" Powlette v Morris, 13 CIV. 7378 (KPF), 2016 WL 3017396, at *11 (S.D.N.Y. May 23, 2016) (citing Messerschmidt v. Millender, 132 S. Ct. 1235, 1244–45 (2012)).

Generally, a qualified immunity inquiry in a civil rights case involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." Tafari, 714 F.Supp.2d at 353 (citation omitted). Courts may exercise their sound discretion in deciding which of the two prongs should be addressed first, in light of the circumstances in the particular case at hand. Id. (citing Pearson v. Callahan, 129 S.Ct. 808, 817 (2009)). In determining the second prong, courts within the second circuit consider whether:

> (1) whether the right in question was defined with 'reasonable specificity';
> (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and
> (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

Id. (citations omitted). "[I]t is well settled that a defendant may be entitled to qualified immunity even where he has used excessive force." Henry v Dinelle, 929 F.Supp.2d 107, 123–24 (N.D.N.Y. 2013), affd, 557 Fed.Appx. 20 (2nd Cir. 2014); Hunter v. Bryant, 502 U.S. 224, 227 (1991) ("Even law enforcement officials who reasonably but mistakenly conclude that [their conduct is lawful] are entitled to immunity."); Kent v. Katz, 125 Fed.Appx. 334, 335 (2nd Cir. 2005) ("Plaintiff argues that . . . the jury's verdicts on excessive force and qualified immunity were legally inconsistent because the jury found that defendant had acted unreasonably in using excessive force, but that defendant had reasonably believed his conduct to be lawful. The Supreme Court has made it clear, however, that these are separate

questions to which differing answers can be given."); Stephenson v. Doe, 332 F.3d 68, 77 (2nd Cir. 2003) ("The Supreme Court has recently made clear that even officers who are found to have used excessive force may be entitled through the qualified immunity doctrine to an extra layer of protection 'from the sometimes hazy border between excessive and acceptable force.") (citations omitted). This is due, in part, because the scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." Malley v Briggs, 475 US 335, 335 (1986).

Should the Court find that there is a genuine issue of material fact as to whether the force applied by the County Officers was repugnant to the conscience and/or the injuries were not *de minimis*, Defendants may rely on qualified immunity because it cannot be reasonably clear to a prudent officer that the actions, such as those displayed here, were unlawful. First of all, order and discipline are vital principles for any corrections institution. Without such, the safety and security of all inmates may be compromised. Secondly, the County Officers performed their duties in good faith and in furtherance of maintaining order when an inmate mishandles food and otherwise causes a disruption of order. Under the facts asserted, Plaintiff cannot establish that Defendants' alleged conduct, if committed, violated clearly established statutory or constitutional rights of which a reasonable person would have known.

The unlawfulness must be apparent, Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citations omitted), yet that is not the case here. The law allows corrections officers to apply physical force as reasonably necessary to enforce compliance with proper prison regulations, and to protect themselves from physical harm from an inmate. Henry v. Dinelle, 929 F. Supp. 2d 107, 117 (N.D.N.Y. 2013), aff'd, 557 Fed. Appx. 20 (2d Cir. 2014); see Whitley v. Albers, 475 U.S. 312, 319 (1986); Boyd v. Selmer, 842 F. Supp. 52, 56–57 (N.D.N.Y. 1994); Akili v. Ward, 547 F. Supp. 729, 733–34 (N.D.N.Y. 1982); Argentine v. McGinnis, 311 F. Supp. 134, 138 (S.D.N.Y. 1969). Considering that the County officers

were applying force reasonably necessary to transport an inmate causing a disturbance to a secure cell, the unlawfulness of such force is not readily apparent. Because no reasonable jury could find that the Defendants' actions were objectively unreasonable or that a reasonable officer would have been aware that such action was clearly unlawful, Defendants are entitled to qualified immunity.

## POINT III

## PLAINTIFF FAILED TO ESTABLISH ANY GENUINE ISSUE OF MATERIAL FACT SHOWING RETALIATION UNDER §1983

To prevail on a retaliation claim under 42 U.S.C. §1983, a plaintiff must prove by the preponderance of the evidence that:

> "(1) the speech or conduct at issue was 'protected'; (2) the defendants took 'adverse action' against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action—in other words, that the protected conduct was a 'substantial or motivating factor' in the defendants' decision to take action against the plaintiff."

Tafari, 714 F Supp 2d at 347 (citations omitted). "In order to adequately establish an 'adverse action,' Plaintiff must show that he was subject to retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights." Turner v Sidorowicz, 12-CV-7048 (NSR), 2016 WL 3938344, at *4 (S.D.N.Y. July 18, 2016) (citation omitted). The Second Circuit has explained that fear is a key aspect in whether an inmate suffered an adverse action, specifically when fear is used as a means to stifle an inmate's ability or desire to file a grievance or law suit. Id. (citation omitted).

Plaintiff's claim of retaliation is based on the contention that the County Officers violated Plaintiff's belongings and harmed Plaintiff in retaliation for religious status as a Muslim and for a prior civil rights lawsuit Plaintiff filed based on his religious rights as a Muslim. However, the facts alleged

do not support a retaliation claim. Plaintiff filed a grievance yet there is no indication that any County Officers made any statements that sought to threaten or stop Plaintiff from filing such a grievance. (Ex. "F", p. 62, ln. 13-24). Plaintiff also did not see the County Officers search his belongings nor does he have any idea whether the County Officers knew of the principle of ablution or the precept regarding dogs. (Ex. "F", p. 45, ln. 8-14; p. 30, ln. 18-25). While Plaintiff assumed the K9's moved through his belongings, Plaintiff conceded that he does not know what the County Officers' intentions were. (Ex. "F", p.45, ln. 15-18; p. 46, ln. 12-16). More importantly, Plaintiff admitted that he has no reason to believe that the County officers acted in retaliation or that the County Officers knew that the search conducted was adverse to Plaintiff's religious beliefs. Id. In fact, Plaintiff admitted that while he doesn't know the names of the officers involved, no officer made any comment to him regarding religion at any point in time. (Ex. "H", p. 26, 13-16; p. 35, ln.7-9; p. 37, ln. 2-4).

Plaintiff also does not have any specific recollection as to whether the County Officers were even aware of his prior law suit. (Ex. "F", p. 47-48). Even if they were aware, the prior lawsuit was summary dismissed in part, and ultimately returned a verdict for the defense. See Ex. "K" for a copy of the Opinion & Order, and Judgment in 10 CV 1549 (RPP).

Therefore, Plaintiff's claim of retaliation should be dismissed as a matter of law because such a claim cannot exist under these facts. There is absolutely no evidence in the record that the search was conducted to have a dog specifically rummage through Plaintiff's particular belongings in retaliation for Plaintiff's prior lawsuit, which also returned a defense verdict. The County officers were simply searching the entire multi-unit housing area where Plaintiff was housed, and Plaintiff's claim for retaliation has no merit.



CATANIA, MAHON, MILLIGRAM & RIDER, PLLC
P.O. BOX 1479 • NEWBURGH, N.Y. 12551 • (845) 565-1100

**POINT IV**

**PLAINTIFF'S FREE EXERCISE CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFF'S RELIGION WAS NOT SUBSTANTIALLY BURDENED AND DEFENDANTS' CONDUCT WAS REASONABLY RELATED TO A LEGITIMATE PENOLOGICAL INTEREST**

Inmates retain protections afforded by the First Amendment, including its protection of free exercise of religion. O'Lone v Estate of Shabazz, 482 US 342, 348 (1987). "It is well-accepted, however, that a prisoner's right to exercise his religion involves considerations that do not apply to persons outside of the penal system." Ramrattan v Fischer, 13 CIV. 6890 KPF, 2015 WL 3604242, at *6 [(S.D.N.Y. June 9, 2015). To be precise, an inmate's right is not absolute or unrestrained, and it is subject to valid penological considerations, including those relating to institutional security. Id. (citations omitted). "[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Turner v Sidorowicz, 12-CV-7048 (NSR), 2016 WL 3938344, at *5 (S.D.N.Y. July 18, 2016).

"Accordingly, free exercise claims of prisoners are judged under a reasonableness test less restrictive than that ordinarily applied: a regulation that burdens a protected right passes constitutional muster if it is reasonably related to legitimate penological interests." Ramrattan v Fischer, supra. To prevail, a plaintiff must show that he or she (1) has a sincerely held religious belief, (2) that it was substantially burdened, and (3) that defendants' conduct was not reasonably related to some legitimate penological interest. Turner v Sidorowicz, supra.

A substantial burden is more than a mere inconvenience. Hamilton v Countant, 13-CV-669(RA), 2016 WL 881126 at *5 (S.D.N.Y. Mar. 1, 2016) (citations omitted). A substantial burden on religious exercise exists when an individual is required to choose between following his religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of his religion on the other hand. Vann v

Fischer, 11 CIV. 1958 KPF, 2014 WL 4188077 at *9 (S.D.N.Y. Aug. 25, 2014), reconsideration denied, 11 CIV. 1958 KPF, 2015 WL 105792 (S.D.N.Y. Jan. 7, 2015).

When determining whether the burden is reasonably related to a legitimate penological interest, a court evaluates four factors: (1) whether the action had a valid, rational connection to a legitimate governmental objective; (2) whether the prisoner has an alternative means of exercising the burdened right; (3) the impact on guards, inmates, and prison resources of accommodating the right; and (4) the existence of alternative means of facilitating the plaintiff's exercise of the right that have only a *de minimis* adverse effect on valid penological interests. Williams v Leonard, 9:11-CV-1158 TJM, 2015 WL 3536733, at *10–11 (N.D.N.Y. Mar. 19, 2015), report and recommendation adopted in part, rejected in part, 9:11-CV-1158, 2015 WL 3544879 (N.D.N.Y. June 4, 2015) (citations omitted).

In this case, assuming that Plaintiff did have a sincerely held religious belief that dogs cannot come in contact with his person and belongings or that he must achieve "ablution" before prayer, Plaintiff's beliefs were not substantially burdened. At no point was Plaintiff ever required to choose between following his religion and abandoning one of the precepts of his religion. Despite the fact that Plaintiff testified that he used to have two dogs of his own, Plaintiff admitted that he does not exactly know how to achieve ablution if a dog came in contact with his belongings. (Ex. "F", p. 41, ln. 21-25; p.116, ln. 11-14; p. 118, ln. 2-6). Thus, Plaintiff could not be forced to abandon the fulfillment of a principle that he did not even know how to fulfill. More importantly, even if the prayer rug did come in contact with a dog, Plaintiff testified that he would have "[p]ut it to the side and prayed on the floor." (Id. at p. 41, ln. 6-10). If so, simply praying without a prayer rug is nothing more than a mere inconvenience for Plaintiff and cannot reasonably be deemed a "substantial burden" as defined by law.

Furthermore, Defendants' conduct was reasonably related to maintaining order and discipline among all inmates in the facility. Defendants' objective was to search Plaintiff's entire multi-unit housing area for any contraband—not just Plaintiff's belongings—and Defendants performed the search in only about 30 minutes. (Ex. "E"). K9 searches, whether commonplace or not, clearly serve a legitimate penological interest of protecting inmates from being attacked by other inmates, from allowing contraband to spread, and overall security of the facility. The K9 search is particularly ideal considering a dog's ability to quickly and more accurately pinpoint contraband without rummaging through each and every item in the room.

Ultimately, Plaintiff's Free Exercise claim should be dismissed. There is no evidence that during or after the search Plaintiff was prohibited from continuing his sincerely held religious beliefs, and Defendants' actions were reasonably related to a legitimate penological goal.

## POINT V

## PLAINTIFF'S CLAIMS AGAINST DEFENDANT, THE COUNTY OF ROCKLAND, FOR NEGLIGENT HIRING, TRAINING, AND SUPERVISION SHOULD BE DISMISSED BECAUSE THE COUNTY OFFICERS WERE ACTING WITHIN SCOPE OF EMPLOYMENT

Plaintiff asserts the state law claim of negligent hiring, training, and supervision against the County.[3] Applying New York law as the state in which this federal court sits and the jurisdiction with sole interest in the outcome of this case, Grund v. Delaware Charter Guarantee & Trust Co., 788 F. Supp. 2d 226, 243 (S.D.N.Y. 2011), Plaintiff cannot maintain this action for negligent hiring, training and supervision against the County.

[3] Plaintiff does not seek municipal liability under 42 U.S.C. § 1983 based on a custom or policy of inadequate training, supervision, or hiring. Instead, Plaintiff brings a state law claim based on negligent hiring, training and supervision against the County. See Ex. "B," Second Cause of Action as against the County.

"Under New York law, an employer can be held liable under theories of negligent hiring, negligent retention and negligent supervision." Daniels v. Loizzo, 174 F.R.D. 295, 299 (S.D.N.Y. 1997) (citing Perry v. Burger King Corp., 924 F.Supp. 548, 552 (S.D.N.Y.1996)). However, "[i]t is well settled that a claim for negligent hiring, retention, and training will be dismissed when an employer concedes that the acts alleged to have been perpetrated by the employee were within the scope of that employee's employment." Thompson v. City of New York, 23 N.Y.S.3d 839, 856 (N.Y. Sup. Ct. 2015) (citations omitted); see Brown v. State, 814 N.Y.S.2d 492, 507 (N.Y. Ct. Cl. 2006), aff'd, 841 N.Y.S.2d 698 (N.Y. App. Div. 3d Dept. 2007) (holding that causes of action for negligent hiring and supervision are not available when all allegedly tortious acts of employees were carried out in the scope of their employment); Karoon v. New York City Transit Auth., 659 N.Y.S.2d 27, 29 (N.Y. App. Div. 1st Dept. 1997) ("Generally, where an employee is acting within the scope of his or her employment, thereby rendering the employer liable for any damages caused by the employee's negligence under a theory of *respondeat superior*, no claim may proceed against the employer for negligent hiring or retention.")[4] (citation omitted). "This is because if the employee was not negligent, there is no basis for imposing liability on the employer, and if the employee was negligent, the employer must pay the judgment regardless of the reasonableness of the hiring or retention or the adequacy of the training." Karoon v. New York City Transit Auth., *supra*.

If it is undisputable that the actions by the employee were performed in the scope of their employment, then a plaintiff cannot proceed with a cause of action for negligent hiring, training and

[4] While an exception exists to this general principle where the plaintiff seeks punitive damages from the employer based on alleged gross negligence in hiring or retention of the employee, the Court of Appeals has clearly held that the political subdivisions of New York State are not subject to punitive damages. See Karoon, supra at 29 (citing Sharapata v. Town of Islip, 56 N.Y.2d 332, 452 N.Y.S.2d 347, 437 N.E.2d 1104; Clark–Fitzpatrick, Inc. v. Long Island Rail Road, 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190). Furthermore, Plaintiff merely alleges that the County acted negligently rather than recklessly, intentionally or with gross negligence. Ex. "B," ¶ 41.



CATANIA, MAHON, MILLIGRAM & RIDER, PLLC
P.O. BOX 1479 • NEWBURGH, N.Y. 12551 • (845) 565-1100

supervision, and an employer is entitled to summary judgment dismissing such a claim. See Eckardt v. City of White Plains, 930 N.Y.S.2d 22 (N.Y. App. Div. 2d Dept. 2011); Karoon, 659 N.Y.S.2d at 29. In Eckardt, *supra*, plaintiff asserted a cause of action of negligent hiring and supervision against the City after the plaintiff was arrested for disorderly conduct and tasered by officers at police headquarters. Id. at 25. Regardless of whether the acts of tasering the plaintiff was objectively reasonable or completely unnecessary, the court determined that because the acts occurred during the arrest and detention of the plaintiff by several police officers, it was "beyond dispute that these actions were performed by the officers in the scope of their employment with the City." Id. Thus, the Court stated that the lower court should have granted the branch of the City's motion which were for summary judgment dismissing the negligent hiring and supervision cause of action. Id.

Here, not only does Plaintiff assert the theory of *respondeat superior*, (Ex. "B", ¶ 39), Plaintiff alleges in his complaint that the County Officers were acting under the scope of employment when Plaintiff sustained his alleged injuries (Ex. "B", ¶ 38). The County officers responded to a disturbance by the Plaintiff and transported Plaintiff to a secure location according to facility operations. There is no claim nor evidence that the County officers were off-duty or acting under personal motives outside the scope of employment. As in Eckardt, *supra*, it is undisputable that the County Officers were working with the scope of employment. Thus, under New York law, Plaintiff's state law claim for negligent hiring, training and supervision against the County must be dismissed.



CATANIA, MAHON, MILLIGRAM & RIDER, PLLC
P.O. BOX 1479 • NEWBURGH, N.Y. 12551 • (845) 565-1100

## POINT VI

## PLAINTIFF'S CLAIM AGAINST DEFENDANT, THE COUNTY OF ROCKLAND, UNDER RESPONDEAT SUPERIOR MUST BE DISMISSED BECAUSE A MUNICIPALITY CANNOT BE HELD LIABLE UNDER §1983 ON A THEORY OF RESPONDEAT SUPERIOR

Plaintiff's First Cause of Action against the County alleges that the County is liable for the intentional torts committed by the County Officers under the doctrine of *respondeat superior*. Ex. "B," ¶ 39. Nevertheless, all claims against the County Officers are made for intentional torts allegedly in violation of Constitutional rights pursuant to 42 U.S.C. §1983. Ex. "B," ¶¶ 46, 50.

It is well settled that while "municipalities may be sued directly under §1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision," Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983), "**a municipality cannot be held liable under §1983 on a *respondeat superior* theory**." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978) (emphasis added); see Green v. City of New York, 465 F.3d 65, 80 (2d Cir. 2006) ("For the purpose of Section 1983, a municipality is not vicariously liable for the acts of its employees.") (citations omitted); Parris v. New York State Dep't Corr. Servs., 947 F. Supp. 2d 354, 364 (S.D.N.Y. 2013) ("There is no *respondeat superior* liability in §1983 cases.") (citations omitted).

Here, Plaintiff did not sue the County directly under §1983 for constitutional deprivations pursuant to some governmental custom, practice or policy. Even if he did, the County is not the moving force behind any alleged Constitutional Deprivation. Rather, Plaintiff sues with respect to an alleged deprivation resulting from a single isolated incident with the County Officers. Thus, any alleged acts or omissions against the County fall squarely within the dominion of vicarious liability. Therefore, Plaintiff's First Cause of Action sounding in *respondeat superior* must be dismissed as a matter of law.

## CONCLUSION

WHEREFORE, THE COUNTY OF ROCKLAND, SGT. KARL MUELLER, SGT. JOHN KLEBER, CORRECTION OFFICER JOHN KEZEK and CORRECTION OFFICER PAUL ORBACZ in their individual and official capacities as Correction Officers employed by the County of Rockland, respectfully request this Court issue an order, pursuant to FRCP 56, granting summary judgment in favor of Defendants and dismissing Plaintiff's Complaint in its entirety, together with other and further relief as this Court may deem just, proper and equitable, including the costs and reasonable attorney fees incurred.

Dated: Newburgh, New York
January 10, 2018

Respectfully submitted,

CATANIA, MAHON, MILLIGRAM &
RIDER, PLLC

By: ______________________
ARI I. BAUER, Esq.
Attorneys for Defendants
THE COUNTY OF ROCKLAND,
SGT. KARL MUELLER, SGT. JOHN KLEBER,
CORRECTION OFFICER JOHN KEZEK and
CORRECTION OFFICER PAUL ORBACZ
*Individually and in their official capacities*
One Corwin Court, PO Box 1479
Newburgh, New York 12550
Tel. No. (845) 565-1100

TO: MR. KIM VASQUEZ
*Pro Se Plaintiff*
4600 Monterey Oaks Blvd., Apt. 722
Austin, Texas 78749
E-Mail: trubluchef@icloud.com