UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KIM VASQUEZ,

                    Plaintiff,

        -against-

THE COUNTY OF ROCKLAND, SGT. KARL MUELLER,
SGT. JOHN KLEBER, CORRECTION OFFICER JOHN
KEZEK AND CORRECTION OFFICER PAUL OBACZ, IN
THEIR INDIVIDUAL AND OFFICIAL CAPACITIES AS
CORRECTION OFFICERS EMPLOYED BY THE COUNTY
OF ROCKLAND,

                    Defendants.

CIVIL ACTION NO.: 13 Civ. 5632 (SLC)

**OPINION & ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT**

**SARAH L. CAVE**, United States Magistrate Judge.

## I.    INTRODUCTION

        This is a Section 1983 action brought by Kim Vasquez ("Vasquez"), a former inmate of the

Rockland County Jail, against the County of Rockland and several corrections officers.  Vasquez

alleges that, during a prior incarceration at the same jail, he had commenced a federal civil rights

action asserting violations of his right to free exercise of his religion under the First Amendment.

He alleges that, during his detention in 2012, in retaliation for bringing the prior civil rights action,

corrections officers subjected him to religious persecution and an assault that resulted in physical

injuries, and then were deliberately indifferent to his medical needs.  Defendants have denied all

of Vasquez's allegations and now move for summary judgment.

        For the reasons set forth below, Defendants' motion is GRANTED.

## II.  BACKGROUND

### A. Factual Background

The Court summarizes below the facts, which are undisputed unless otherwise indicated, from the documents Defendants have submitted in support of their motion (ECF Nos. 97–100), Defendants' statement pursuant to Local Civil Rule 56.1 (ECF No. 101), and Vasquez's submissions in response to the motion.  (ECF Nos. 102, 103, 110).  The Court describes the facts "in the light most favorable to" Vasquez, the non-movant.  Wandering Dago, Inc. v. Destito, 879 F.3d 20, 30 (2d Cir. 2018) (internal quotation omitted); Vasquez v. Reilly, No. 15 Civ. 9528 (KMK), 2018 WL 2768648, at *1 (S.D.N.Y. June 7, 2018).

When filing a summary judgment motion, Local Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civ. R. 56.1(a).  In response, the non-moving party must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Civ. R. 56.1(b). "A pro se litigant is not excused from this rule," Brandever v. Port Imperial Ferry Corp., No. 13 Civ. 2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014), and "[a] nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible."  T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009); Vasquez, 2018 WL 2768648, at *1 n.1.  In this case, Defendants served and filed their Rule 56.1 statement (ECF No. 101), along with a statement pursuant to Local Civil Rule 56.2

notifying Vasquez of the potential consequences of not responding to the motion.  (See ECF No. 97-1 (Notice to Pro Se Litigant); ECF No. 98 (Certificate of Service)).  Despite this notice, Vasquez did not submit a response to Defendants' 56.1 Statement, and therefore, the Court may conclude that the facts in Defendants 56.1 Statement are uncontested and admissible.  See Vasquez, 2018 WL 2768648, at *1 n.1; Brandever, 2014 WL 1053774, at *3.

In the absence of a response from Vasquez that meets the requirements of the Federal Rules of Civil Procedure and this Court's Local Civil Rules, the Court must still afford "special solicitude" to Vasquez, a pro se litigant, and exercise its discretion "to conduct an assiduous review of the record," including his testimony, in deciding Defendants' motion.  Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001); Vasquez, 2018 WL 2768648, at *1 n.1 (collecting cases in which courts conducted independent review of the record where a pro se plaintiff had failed to submit a proper Rule 56.1 statement).  To the extent that Vasquez, in the submissions he has made in apparent response to Defendants' motion, makes factual allegations without citations to the record or that contradict his sworn testimony, the Court will disregard those allegations.  See Holtz, 258 F.3d at 73 (explaining that the court is not required to search the record to find genuine issues of material fact that a non-moving party failed to raise); Vasquez, 2018 WL 2768648, at *1 n.1 (disregarding plaintiff's factual assertions in opposition papers that lacked citation or contradicted his sworn testimony); Berry v. Marchinkowski, 137 F. Supp. 3d 495, 502 n.1 (S.D.N.Y. 2015) (same).

### 1.  **Events prior to July 14, 2012**

In 2007, Vasquez, who is a practicing Muslim, was serving a two-year term at the Rockland County Correctional Facility (the "Jail").[1]  (ECF Nos. 12 ¶¶ 18, 19; 97-10 at 19, 32; 97-15 at 2–3).  In 2010, he and two other inmates commenced a Section 1983 lawsuit against the County of Rockland and Reverend Teresa Clapp, the Jail's chaplain, alleging that between March and May 2007, Reverend Clapp had distributed two religious booklets (the "Tracts") that contained defamatory statements about the Muslim faith.  (ECF Nos. 97-15 at 2–3; 101 ¶ 19).  The plaintiffs voluntarily withdrew their claims against the County of Rockland, and in 2011, the Honorable Robert P. Patterson, Jr. of this District, granted in part and denied in part Reverend Clapp's motion for summary judgment, dismissing the claims against her in her official capacity.  (ECF No. 97-15 at 3–4).  The claims against Reverend Clapp in her personal capacity proceeded to trial, following which a jury rendered a verdict in her favor as to each of the three plaintiffs' claims. (ECF No. 97-15 at 14–20).

In 2009, after being charged with drug possession and driving under the influence, Vasquez pled guilty to a felony charge and enrolled in a Drug Treatment Alternative to Prison program ("DTAP").  (ECF Nos. 97-10 at 12–17; 101 ¶¶ 2–4).  In about May 2012, while he was in the final stage of DTAP, he was committed to the Jail for a term of 58 days.  (ECF No. 97-12 at 13–19, 44).

Vasquez converted to Islam sometime in 1999 or 2000.  (ECF No. 97-10 at 78–79).  He testified that, as a Muslim, before he prays, he and his belongings must be cleaned through a

---

[1] The Jail is located at 55 New Hempstead Road, New City, New York.  (ECF Nos. 12 ¶ 15; 97-10 at 24; 101 ¶ 1).

process called ablution.[2]  (ECF No. 97-10 at 35).  If he or his belongings came into contact with a dog, he believed that he would become "impure" and would need to perform research to learn "exactly" what cleansing steps he would need to perform.  (ECF No. 97-10 at 43).  He understood that cleansing following contact with a dog had to be performed "more intensely more times than a regular wash."  (ECF No. 97-10 at 35).  Vasquez testified that, in 2009, "[r]ight before the incident," he owned two dogs himself.  (ECF No. 97-10 at 117).

## 2.  Events of July 14, 2012

On July 14, 2012, Vasquez was an inmate in the D-Wing at the Jail.  (ECF Nos. 97-10 at 26, 29; 101 ¶ 7).  On that date, from about 2:20 p.m. to 2:50 p.m., a K-9 search team conducted a drug search of D-Wing.  (ECF Nos. 97-9; 101 ¶¶ 8–9).  The officers who conducted the search were acting within the scope of their employment at the time.  (ECF No. 101 ¶ 10).  While the K-9 search was in progress, Vasquez and the other inmates were escorted out of D-Wing.  (ECF Nos. 97-10 at 32; 101 ¶ 12).  From where he was sitting during the search, he was unable to see the officers conducting the K-9 search.  (ECF Nos. 97-10 at 31–32; 101 ¶ 13).

Once the K-9 search was completed, Vasquez returned to his living space to find that his crackers appeared to have bite marks from an animal.  (ECF No. 97-10 at 34).  He was concerned that the dog had touched his belongings, which would render him unable to pray using any items, such as his prayer rug, that the dog had touched.  (ECF No. 97-10 at 43–44).  With the time to begin his prayers approaching, Vasquez asked the officers where the dog had licked, but did not

---

[2] "Ablution is a cleansing process required before prayers in the Islamic and Muslim religions."  Lopez v. State of New York Dep't of Corr. Servs., No. 94 Civ. 6708, 1996 WL 396152, at *1 n.2 (S.D.N.Y. July 15, 1996).  If a Muslim is "unable to make the appropriate ablutions," he may postpone the prayer.  Chatin v. State, No. 96 Civ. 420 (DLC), 1998 WL 196195, at * 2 (S.D.N.Y. Apr. 23, 1998).

get an immediate answer. (ECF No. 97-10 at 35–38). He placed the crackers on the floor, and, he alleges, another inmate named Adam Gerber kicked the crackers "under the door" and out into the common area. (ECF Nos. 97-10 at 38; 97-12 at 24). Sergeant Karl Mueller, a Defendant in this action, and several officers whose identities Vasquez did not know, entered D-Wing, handcuffed Vasquez, and escorted him out of the area. (ECF Nos. 97-10 at 38–40; 97-12 at 27; 101 ¶¶ 25–26). Vasquez's disciplinary records indicate that the other officers were Defendants Sergeant John Kleber and Corrections Officers John Kezek and Paul Orbacz. (ECF No. 97-11 at 5). Vasquez claimed that the officers "hit [his] nose and face into the wall" while Sergeant Mueller handcuffed him. (ECF No. 97-10 at 39).

The officers then escorted him out of D-Wing to the "dirty tank," a holding cell that had two benches, a toilet, and a sink. (ECF Nos. 97-10 at 66–67; 101 ¶ 27). En route to the dirty tank, Vasquez claims that the officers "banged" his head into at least two doors. (ECF Nos. 97-10 at 55–58, 63; 97-12 at 36–37). Vasquez claims that, when he reached the dirty tank, his head was not bleeding, but he felt "dizzy" and was "throwing up and heaving." (ECF Nos. 97-10 at 52; 97-12 at 41–42). Once he was in the dirty tank, Vasquez alleges that Sergeant Mueller "took his nails and planted them into [his] chest and [] scraped downward," causing "blood spots" on his chest. (ECF Nos. 97-10 at 67–68; 97-12 at 42).

Suspecting he had a concussion, Vasquez asked for medical attention. (ECF No. 97-12 at 41). At about 4:00 pm, about an hour after being placed in the dirty tank, a nurse examined Vasquez. (ECF Nos. 97-8 at 71; 101 ¶ 29). She observed "no visual injuries," but noted that Vasquez was complaining of a headache and vomiting. (ECF No. 97-8 at 71). He asked to go to a hospital outside the Jail, but she determined there was "no reason" to do so. (Id. at 72). The

nurse gave Vasquez Tylenol and put him on the sick call list to see a doctor on his next visit.  (Id.at

71).  The nurse saw him again later the same day and gave him another dose of Tylenol.  (Id. at

71–72).  Vasquez did not receive any treatment for the scratches on his chest, which healed on

their own.  (ECF No. 97-10 at 86–87).

### 3.  Events after July 14, 2012

On July 16, 2012, a doctor examined Vasquez at the Jail.  (ECF No. 97-8 at 57, 72).  The

doctor observed some "tenderness" and decreased range of motion in Vasquez's neck, and noted

that he complained of a "neck spasm."  (ECF No. 97-8 at 72).  The doctor prescribed a four-day

regimen of Motrin and Flexeril.  (ECF No. 97-8 at 57, 72).[3]  The doctor saw Vasquez again on

July 25, at which time he complained of weakness from fasting for Ramadan, but did not complain

any injuries enduring from the July 14 incident.  (ECF No. 97-8 at 69).  Although Vasquez claims

that the nurse and doctor advised him that he might have a concussion (ECF Nos. 97-10 at 75;

97-12 at 48–50), that diagnosis is not reflected in the infirmary records.  (ECF No. 97-8 at 69).

As a result of the July 14 incident, Vasquez was charged with causing a disturbance and

throwing food, for which he was held in the dirty tank pending a hearing.  (ECF Nos. 97-10 at 71;

97-11 at 2; 101 ¶ 42).  In their disciplinary reports, the officers described Vasquez's conduct as

"throwing a box of crackers" and causing a disturbance.  (ECF No. 97-11 at 5).  On July 16, 2012,

a disciplinary hearing was held, at which Vasquez was found guilty of both infractions, sentenced

to 30 days in "lock in," 30 days loss of commissary, and a $25.00 disciplinary surcharge.  (ECF Nos.

97-10 at 71–72; 97-11 at 21; 101 ¶¶ 43–45).  While in lock in, Vasquez had to remain in a cell for

---

[3] Flexeril, also known as cyclobenzaprine, is a short-term muscle relaxant taken orally.  See Flexeril Tablet, WEBMD, https://www.webmd.com/drugs/2/drug-11372/flexeril-oral/details (last visited February 10, 2020).

23 hours a day and was allowed out for one hour for recreation and 15 minutes for shower and telephone use.  (ECF. Nos. 97-10 at 72; 97-11 at 21).  Ultimately, Vasquez was released from the Jail on July 26, 2012, and thus served only twelve (12) days in lock in.  (ECF Nos. 97-10 at 73–74; 97-12 at 44; 97-13 at 2).

Based on the July 14 incident, Vasquez filed a grievance with the Jail.  (ECF Nos. 97-13 at 2; 101 ¶ 38).  He claimed that after he inquired about whether the search dog had touched his property, Sergeant Mueller and the other officers "ambushed" him and bent his wrist "improperly" while escorting him to the dirty tank, and that Sergeant Mueller "dug his nails" into his chest and neck.  (ECF No. 97-13 at 2).  He admitted that he received medical attention, but claimed that his requests to see a psychiatrist for his sleeping problems were "ignored."  (ECF No. 97-13 at 2).  He requested medical attention outside the Jail to evaluate his symptoms of a concussion and sleep loss.  (Id.)  Lieutenant John Byron investigated Vasquez's grievance and found that he had been removed from D-Wing after causing a disturbance, and had been examined that day by medical staff, who concluded that no further medical attention was required.  (ECF Nos. 97-14 at 2; 101 ¶ 40).  Lieutenant Byron therefore found that his complaint was unsubstantiated, and his grievance was denied.  (ECF Nos. 97-14 at 2; 101 ¶ 41).

At his examination pursuant to Section 50-H of New York General Municipal Law, on August 29, 2013, Vasquez testified that the dizziness and headaches went away after about one month.  (ECF No. 97-12 at 53).  He claimed that as a result of the incident he continues to suffer

from difficulty sleeping, post-traumatic stress, and sexual dysfunction. (ECF No. 97-12 at 60–63).

He has been prescribed Paxil,[4] Remeron,[5] Trazodone,[6] and Cialis[7] for these symptoms. (Id.)

At his deposition on September 29, 2016, Vasquez testified that he was still traumatized from the July 14, 2012 incident, and was experiencing trouble sleeping, sexual dysfunction, and urination issues, for which he was taking medication that was alleviating his symptoms. (ECF No. 97-10 at 82, 104). He testified that the scratches had healed, although he "might have a little blemish." (ECF Nos. 97-10 at 86–87; 101 ¶ 32). With regard to the officers' actions, he testified none of the officers said anything to him about his religion or the prior lawsuit, but he was "certain they knew about it because it was pretty big" and because "when [he] ask[ed] a question about his religion, [he] got beat up." (ECF Nos. 97-10 at 48–49; 101 ¶¶ 33–36).

## B. **Procedural Background**

On July 11, 2013, Vasquez, through counsel, filed a civil action in New York State Supreme Court, Rockland County, asserting claims under Section 1983 against the County of Rockland, Sergeant Mueller, and Correction Officers John Does 1–3. (ECF No. 2 at 7–18). On or about July 19, 2013, the County of Rockland and Sergeant Mueller accepted service of the summons and complaint. (ECF No. 2 ¶ 8). On August 12, 2013, the County of Rockland and Sergeant Mueller timely removed the action to this Court. (ECF No. 2 at 1).

---

[4] Paxil, also known as paroxetine, is used to treat depression, panic attacks, and anxiety disorders. See Paxil CR, WEBMD, https://www.webmd.com/drugs/2/drug-32900/paxil-cr-oral/details (last visited February 10, 2020).

[5] Remeron, also known as mirtazapine, is used to treat depression. See Remeron Tablet, WEBMD, https://www.webmd.com/drugs/2/drug-13707/remeron-oral/details (last visited February 10, 2020).

[6] Trazodone is used to treat depression. See Trazodone HCL, WEBMD, https://www.webmd.com/drugs/2/drug-11188/trazodone-oral/details (last visited February 10, 2020).

[7] Cialis, also known as tadalafil, is used to treat male sexual function problems. See Cialis, WEBMD, https://www.webmd.com/drugs/2/drug-77881/cialis-oral/details (last visited February 10, 2020).

On December 2, 2013, Vasquez filed the Amended Complaint, substituting Sergeant Kleber and Correction Officers Kezek and Orbacz in place of the Correction Officer John Does 1–3. (ECF No. 12). In the Amended Complaint, Vasquez asserts that the County of Rockland is liable for the acts of Sergeants Mueller and Kleber and Officers Kezek and Orbacz[8] under the doctrine of respondeat superior, for failure to provide adequate training, hiring, supervision, and control, and under a theory of joint and several liability. (ECF No. 12 ¶¶ 37–45). Vasquez alleges that the Individual Defendants engaged in excessive force, retaliated against him, and subsequently denied him medical treatment, in violation of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. (ECF No. 12 ¶¶ 46–52). He seeks $10 million in damages. (ECF No. 12 ¶ 52). On December 10, 2013, the Defendants filed answers to the Amended Complaint. (ECF Nos. 15, 16).

On June 26, 2014, the parties consented to the jurisdiction of the Honorable Henry B. Pitman, United States Magistrate Judge, for all further proceedings. (ECF No. 28). On July 30, 2014, after Vasquez refused to cooperate with his counsel, Judge Pitman granted his counsel's motion to withdraw. (ECF No. 32 at 5). Since that date, Vasquez has acted pro se in this litigation.

On January 10, 2018, Defendants timely filed a motion for summary judgment. (ECF Nos. 97–101). In response, Vasquez made several filings, although none could be construed as a responsive Rule 56.1 statement or memorandum of law explaining why summary judgment should not be granted in Defendants' favor. (ECF Nos. 102–105, 109, 113, 115). Instead, Vasquez claimed that Defendants did not serve him with their summary judgment motion. (ECF Nos. 115,

---

[8] Where appropriate, the Court refers to Mueller, Kleber, Kezek, and Orbacz collectively as the "Individual Defendants."

118, 119). Judge Pitman found Vasquez's assertion "self-serving," "not credible," and "insufficient to overcome the presumption of receipt that results from defendants' affidavit of service." (ECF No. 117 at 1). In the same Order, Judge Pitman informed Vasquez that Defendants' summary judgment motion was "unopposed, fully submitted and ripe for decision." (Id. at 2). Vasquez moved for a "prompt hearing" as well as reconsideration, which Judge Pitman denied. (ECF Nos. 104, 119, 122). This action has now been reassigned to the undersigned.

### III. DISCUSSION

#### A. Legal Standards

##### 1. Motion for summary judgment

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Darnell v. Pineiro, 849 F.3d 17, 22 (2d Cir. 2017); Byrd v. City of New York, No. 17 Civ. 2166 (AJP), 2018 WL 259316, at *3 (S.D.N.Y. Jan. 2, 2018). "On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists," and if the movant satisfies that burden, "the burden shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial' . . . and to present such evidence that would allow a jury to find in his favor." Blue v. City of New York, No. 14 Civ. 7836 (VSB), 2018 WL 1136613, at *5 (S.D.N.Y. Mar. 1, 2018) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

To overcome a summary judgment motion, the nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Blue, 2018 WL

1136613, at *5 (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)).  The nonmoving party must "cit[e] to particular parts of materials in the record" to show that "a fact . . . is genuinely disputed."  Fed. R. Civ. P. 56(c)(1); <u>see</u> <u>Blue</u>, 2018 WL 1136613, at *5; <u>Byrd</u>, 2018 WL 259316, at *3.  Where a party "fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," <u>inter alia</u>, "'consider the fact undisputed for purposes of the motion,' or 'grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it.'"  Fed. R. Civ. P. 56(e)(2), (3); <u>see</u> <u>Blue</u>, 2018 WL 1136613, at *5.

Presented with a motion for summary judgment, the Court does not resolve contested issues of facts, but rather determines whether any disputed issue of material fact exists.  <u>See</u> <u>Donahue v. Windsor Locks Bd. of Fire Comm'rs</u>, 834 F.2d 54, 58 (2d Cir. 1987); <u>Byrd</u>, 2018 WL 259316, at *5.  The applicable substantive law determines which facts are material "and which facts are irrelevant."  <u>Byrd</u>, 2018 WL 259316, at *4.  The Court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party."  <u>Allen v. Coughlin</u>, 64 F.3d 77, 79 (2d Cir. 1995) (internal citations omitted); <u>Wandering Dago</u>, 879 F.3d at 30; <u>Vasquez</u>, 2018 WL 2768648, at *1.  Summary judgment must be denied "if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party."  <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 286 (2d Cir. 2002); <u>see</u> <u>Byrd</u>, 2018 WL 259316, at *5 ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper.").

As explained above (see supra Section II.A.), the Court has afforded Vasquez, a pro se litigant, "special solicitude" on this motion. Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988). This includes reading the pleadings and other submissions Vasquez has made "liberally and interpret[ing] them to 'raise the strongest arguments that they suggest.'"[9] McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)); see Hughes v. Rowe, 449 U.S. 5, 9 (1980) (noting that submissions of pro se litigants are "held 'to less stringent standards than formal pleadings drafted by lawyers'") (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). Still, Vasquez's "pro se status does not exempt [him] from compliance with relevant rules of procedural and substantive law." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (internal citation omitted); Bennett v. James, 737 F. Supp. 2d 219, 226 (S.D.N.Y. 2010) (nonmoving pro se litigant "must produce specific facts to rebut the movant's showing and to establish that there are material issues of fact requiring a trial" (internal quotations omitted); Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (nonmoving pro se plaintiff's "'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment") (quoting Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)).

### 2. Section 1983 liability

A plaintiff asserting a claim under 42 U.S.C. § 1983 must show that, "while acting under color of state law, Defendants deprived him of a federal constitutional or statutory right."

---

[9] Although Vasquez had the benefit of counsel at the beginning of this case and counsel drafted the operative Amended Complaint, Vasquez has been pro se since July 30, 2014, that is, for most of this litigation, through discovery and motion practice. (ECF No. 70 at 2). Magistrate Judge Pitman also observed that Vasquez has undergone treatment for mental illness, which may have further impeded his ability to represent himself in this action. (See ECF Nos. 70 at 3; 117).

Blackson v. City of New York, No. 14 Civ. 462 (VEC), 2014 WL 6772256, at *2 (S.D.N.Y. Dec. 2, 2014) (citing McKithen v. Brown, 481 F.3d 89, 99 (2d Cir. 2007)). To recover damages under Section 1983, a plaintiff must allege "sufficient facts to demonstrate that defendants were personally or directly involved in the alleged violation." Harris v. Westchester Cty. Dep't of Corr., No. 06 Civ. 2011 (RJS), 2008 WL 953616, at *9 (S.D.N.Y. Apr. 3, 2008).[10]

Proof that an individual defendant was involved in the alleged violation is "a prerequisite to finding liability on a claim for damages under [S]ection 1983." Thomas v. Connolly, No. 10 Civ. 2401 (PAC) (MHD), 2012 WL 3758457 at *10 (S.D.N.Y. Aug. 30, 2012). A defendant's involvement may be established by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of the inmate[] by failing to act on information indicating that unconstitutional acts were occurring.

Brandon v. Kinter, 938 F.3d 21, 37 (2d Cir. 2019) (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)); see Thomas, 2012 WL 3758457, at *11.

---

[10] As an inmate asserting a Section 1983 claim, Vasquez was required to first exhaust his administrative remedies in accordance with Section 803 of the Prison Litigation Reform Act (the "PLRA"). See Ruggiero v. Cty. of Orange, 467 F.3d 170, 173 (2d Cir. 2006). Although Defendants asserted in their Answers an affirmative defense of failure to exhaust (see ECF Nos. 15 at 5; 16 at 5), they do not argue in their Motion that Vasquez has failed to exhaust his administrative remedies as to any of his claims. (See ECF No. 99 at 2–3). Therefore, the Court deems the argument waived and finds that Vasquez has exhausted his claims for purposes of its analysis of this motion. See Ruggiero, 467 F.3d at 175 (holding that exhaustion is excused where "defendants have either waived the defense of failure to exhaust or acted in such a[] way as to estop them from raising the defense"); Johnson v. Testman, 380 F.3d 691, 695 (2d Cir. 2004) (finding that government had waived exhaustion defense in statements to court during hearing); Banks v. Cty. of Westchester, 168 F. Supp. 3d 682, 693 n.3 (S.D.N.Y. 2016) ("failure to exhaust administrative remedies in compliance with the PLRA is an affirmative defense" that "'may be waived by a defendant, or forfeited by failure to raise the defense.'") (quoting Arnold v. Goetz, 245 F. Supp. 2d 527, 532 (S.D.N.Y. 2003)).

### 3. **Municipal liability**

To prove municipal liability against the City of New York, Vasquez must establish that action pursuant to official municipal policy caused his alleged constitutional injury. <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 691 (1978); <u>Blue</u>, 2018 WL 1136613, at *18; <u>Triano v. Town of Harrison</u>, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) ("[T]here must be a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'"). Failure to establish an underlying constitutional violation necessarily defeats a <u>Monell</u> claim. <u>Askins v. Doe</u>, 727 F.3d 248, 253 (2d Cir. 2013); <u>Blue</u>, 2018 WL 1136613, at *18; <u>Byrd</u>, 2018 WL 259316, *12–13.

### B. **Application of Legal Standards**

Vasquez claims that, in retaliation for bringing the prior civil rights action that alleged violations of his right to free exercise of his Muslim religion, corrections officers at the Jail subjected him to religious persecution and an assault that resulted in physical injuries, and then were deliberately indifferent to his medical needs. (ECF No. 12 ¶¶ 28, 46–51). He also argues that the County of Rockland is liable under theories of <u>respondeat</u> <u>superior</u>, failure to train and supervise, and joint and several liability, for the actions of the corrections officers. (<u>Id.</u> ¶¶ 37–45). For purposes of analyzing the motion for summary judgment, the Court interprets Vasquez's claims as asserting that the Individual Defendants are liable under Section 1983 for (1) retaliation under the First Amendment,[11] (2) excessive force, and (3) deliberate indifference. The Court

---

[11] Defendants interpret Vasquez's complaint as also raising a claim under the First Amendment that his right to free exercise of religion was violated. (ECF No. 99 at 20-22). To the Court, however, Vasquez's complaint, for which he had the benefit of counsel in preparing, only asserts that the Individual Defendants retaliated against him on the basis of his religion, and does not contain any allegations that he was precluded from freely exercising his religion. (ECF No. 12 at ¶¶ 28 (alleging that Individual Defendants "had a dog search" Vasquez's property "[i]n retaliation for his prior lawsuit"); 49 (alleging that the Individual Defendants "exacted retaliation at the Plaintiff as the result of his

addresses those claims in order, before turning to whether the County of Rockland is liable under Monell for the Individual Defendants' actions.

### 1. First Amendment retaliation claim

To prevail on his First Amendment retaliation claim, Vasquez "must establish '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected [conduct] and the adverse action.'" Holland v. Goord, 758 F.3d 215, 225 (2d Cir. 2014) (quoting Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (internal citations omitted)); Vasquez v. Rockland Cty., No. 15 Civ. 8912, 2017 WL 456473, at *5 (S.D.N.Y. Feb. 1, 2017)[12]; Turner v. Sidorowicz, No. 12 Civ. 7048 (NSR), 2016 WL 3938344, at *4 (S.D.N.Y. July 18, 2016).  Vasquez bears the burden of proving that "the protected conduct was a substantial or motivating factor" in Defendants' imposition of discipline. Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).  "[M]ere negligence is not enough to support a claim of retaliation.  A plaintiff must show some evidence of retaliatory intent to cause the adverse effect." Brandon, 938 F.3d at 40.  The burden then shifts to Defendants to establish "that the disciplinary action would have occurred 'even absent the retaliatory motivation,' which [they] may satisfy by showing that [Vasquez] 'committed the . . . prohibited conduct charged in the misbehavior report.'" Holland, 758 F.3d at 226 (quoting Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002) (internal citation omitted)).

---

exercising his protected rights to allege that his First Amendment Rights were violated")).  Therefore, the Court will analyze only whether Vasquez's retaliation claim survives Defendants' motion for summary judgment.  (See supra Section III.A.1.).

[12] The cited case involved, inter alia, Vasquez's claims that his First Amendment rights were violated when he attempted to file a grievance relating to conduct of corrections officers at the Jail.  The Honorable Kenneth M. Karas granted the County of Rockland's motion to dismiss the complaint.  Vasquez, 2017 WL 456473, at *1, 9.

In this case, Vasquez has not proffered any evidence supporting his claim that the Individual Defendants used excessive force, were deliberately indifferent to his medical needs, or took disciplinary action against him because of his religion. Although his protected religious observation—his need to perform ablutions as to items touched by a dog before he could pray— led to the incident involving the thrown crackers, which in turn prompted the disciplinary action, "such an attenuated link" cannot constitute a "substantial or motivating factor" for retaliation. Holland, 758 F.3d at 225. Vasquez admitted during his testimony that none of the Individual Defendants said anything to him about his religion before, during, or after the incident. (ECF No. 97-10 at 49). There is no evidence in the record that any of the Individual Defendants were aware of the prior lawsuit. (ECF No. 101 ¶ 20). Instead, Vasquez bases his claim on nothing more than speculation that "they knew about [his prior lawsuit] because it was pretty big." (ECF No. 97-10 at 48.) His "otherwise conclusory assertion" that the Individual Defendants disciplined him because he asked "a question about [his] religion" does not create a genuine issue of material fact sufficient to defeat summary judgment. (ECF No. 97-10 at 49); Holland, 758 F.3d at 226; see Vasquez, 2017 WL 456473, at *5 (dismissing First Amendment retaliation claim where Vasquez failed to allege that the officers who disciplined him were aware of his grievance); Turner, 2016 WL 3938344, at *4 (granting summary judgment where inmate "failed to submit any evidence regarding [his] retaliation claim").

## 2. Excessive force claim

With respect to Vasquez's excessive force claim, "the primary source of substantive protection is the Eighth Amendment." Cox v. Malone, 199 F. Supp. 2d 135, 140 (S.D.N.Y. 2002)

(citing <u>Whitley v. Albers</u>, 475 U.S. 312, 327 (1986)), <u>aff'd</u> 56 F. App'x 43 (2d Cir. 2003).  To establish

an Eighth Amendment violation,

> an inmate must meet both an objective and a subjective requirement.  To meet
> the objective requirement, the alleged violation must be sufficiently serious by
> objective standards. . . . The objective component is context-specific, turning upon
> contemporary standards of decency . . . . To meet the subjective requirement, the
> inmate must show that the prison officials involved had a wanton state of mind
> when they were engaging in the alleged misconduct.

<u>Griffin v. Crippen</u>, 193 F.3d 89, 91 (2d Cir. 1999) (internal citations omitted).  "When prison

officials maliciously and sadistically use force to cause harm," a plaintiff need not demonstrate

significant injury because, in those circumstances, "contemporary standards of decency always

are violated."  <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).  "Thus, the malicious use of force to

cause harm constitutes an Eighth Amendment violation <u>per se</u>."  <u>Cox</u>, 199 F. Supp. 2d at 140

(citing <u>Blyden v. Mancusi</u>, 186 F.3d 252, 263 (2d Cir. 1999)).  "[A] <u>de minimis</u> use of force will

rarely suffice to state a constitutional claim."  <u>Romano v. Howarth</u>, 998 F.2d 101, 105 (2d Cir.

1993).  Therefore, "[n]ot every push or shove, even if it may later seem unnecessary in the peace

of a judge's chambers, violates a prisoner's constitutional rights."  <u>Lebron v. Mrzyglod</u>, No. 14 Civ.

10290 (KMK), 2019 WL 3239850, at *14 (S.D.N.Y. July 18, 2019) (quoting <u>Jeanty v. Cty. of Orange</u>,

379 F. Supp. 2d 533, 540 (S.D.N.Y. 2005)).

### a.  <u>Subjective test</u>

"[N]egligence does not rise to the level of an Eighth Amendment constitutional violation,"

which "occurs when a prison official demonstrates 'deliberate indifference' to a substantial risk

of serious harm."  <u>Beauvoir v. Falco</u>, 345 F. Supp. 3d 350, 364 (S.D.N.Y. 2018) (quoting <u>Farmer v.

Brennan</u>, 511 U.S. 825, 828 (1994) (internal citations omitted)).  To satisfy this standard, "a

defendant's conduct must reveal an element of <u>intention</u> or <u>recklessness</u>." <u>Beauvoir</u>, 345 F. Supp.

3d at 364 (citing <u>Darnell</u>, 849 F.3d at 36).

Applying the analysis set forth in <u>Beauvoir</u>, the Court first considers what the extent of

Vasquez's alleged injuries reveals, if anything, about the Individual Defendants' intent. <u>Beauvoir</u>,

345 F. Supp. 3d at 365.  According to Vasquez's own testimony, although he felt "dizzy" and was

"throwing up and heaving" from the two instances when he claims the officers "bang[ed]" his

head into the doors en route to the "dirty tank," he admitted that he was not bleeding and did

not describe any cuts, bumps, or abrasions.  (ECF No. 97-10 at 52–53; ECF No. 97-12 at 41–42).

The medical records from his two examinations by the nurse the same day confirm that he had

"no visual injuries," only that he had a headache and had vomited, for which there was "no

reason" to see a doctor outside the Jail.  (ECF No. 97-8 at 72).  Two days after the incident,

Vasquez exhibited only some "tenderness" and decreased range of motion in his neck, and two

weeks later, he did not complain of any lingering injuries from the incident.  (ECF No. 97-8 at 57,

69, 72).  Vasquez also admitted that the scratches from Sergeant Mueller healed on their own.

(ECF No. 97-10 at 86–87).  Having considered Vasquez's testimony in comparison to all of the

infirmary records, the Court finds that Vasquez's alleged injuries, at most, "are very minor

indications of a malicious or deliberately indifferent intent," and therefore, "this factor weighs in

Defendants' favor." <u>Beauvoir</u>, 345 F. Supp. 3d at 367; <u>see</u> <u>James v. Phillips</u>, No. 05 Civ. 1539 (PKC)

(KNF), 2008 WL 1700125, at *4–5 (S.D.N.Y. Apr. 9, 2008) (where plaintiff was shoved into a cell

door leading to swelling of chin and bruising of knee, the court found that "[n]o reasonable jury

could conclude that [defendant] acted maliciously or sadistically to cause harm"); <u>DeArmas v.</u>

<u>Jaycox</u>, No. 92 Civ. 6139 (LMM), 1993 WL 37501, at *4 (S.D.N.Y. Feb. 8, 1993) (where plaintiff had

"no bruise, no swelling, no redness, no pain, and no other indications of physical injury," the court found "[n]o evidence of malicious purpose or sadism" as is required to establish excessive force claim).[13]

Second, the Court evaluates the record to determine "whether force was applied in a good faith effort to maintain or restore discipline, or whether there were ulterior motives driving the use of force." Beauvoir, 345 F. Supp. 3d at 367 (quoting Hudson, 503 U.S. at 7). Vasquez's contentions alone—which is all he has offered—are an insufficient basis for the Court to conclude that the Individual Defendants' conduct was malicious or sadistic. See Beauvoir, 345 F. Supp. 3d at 368 (plaintiff's self-serving, uncorroborated testimony was insufficient to establish that corrections officers acted maliciously and sadistically to defeat summary judgment); Rodriguez v. Hahn, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) ("a pro se party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment"); see also Robinson v. Henschel, No. 10 Civ. 6212 (PGG), 2014 WL 1257287, at *6 (S.D.N.Y. Mar. 26, 2014) (crediting plaintiff's description of his hand being "slammed" repeatedly against wall, but finding that force was "de minimis"); Reid v. Coughlin, No. 86 Civ. 1351 (LAP), 1994 WL 23152, at *4 (S.D.N.Y. Jan. 26, 1994) (explaining that "regardless of whether or not [defendant's] motive was malevolent, the actions in which that motive was manifested were legally insignificant and not 'repugnant to the conscience of mankind'"). There is no evidence in the record that Vasquez and any of the Individual Defendants "had any preexisting relationship that might support an inference that

---

[13] To the extent Vasquez asserts that his difficulty sleeping, stress, and sexual dysfunction were caused by the incident at the Jail, such emotional injuries "cannot form the basis of an excessive force claim." D'Attore v. City of New York, No. 10 Civ. 6646 (WHP), 2013 WL 1180395, at *5 (S.D.N.Y. Mar. 15, 2013) (rejecting claims of "mental anguish" and "heightened anxiety" as basis for excessive force claim); Davis v. United States, No. 03 Civ. 1800 (NRB), 2004 WL 324880, at *10 n.6 (S.D.N.Y. Feb. 18, 2004) (excessive force claim requires physical injury).

[they] pushed [Vasquez] out of personal resentment or malice." Cox v. Fischer, 248 F. Supp. 3d 471, 486 (S.D.N.Y. 2017); James, 2008 WL 1700125, at *4 ("This is not a case where the officer and inmate had a history of unpleasant interactions.").

Third, the Court must weigh the competing interests of "the need to maintain or restore discipline through force against the risk of injury." Hudson, 503 U.S. at 6 (internal citation omitted). To the extent that the Individual Defendants used force, the record indicates that it was "applied in a good faith effort to maintain or restore discipline" by extracting Vasquez from the D-Wing, where he had caused a disturbance, and relocating him to a segregated cell. Figueroa v. Puerschner, No. 13 Civ. 4309 (JGK), 2015 WL 505406, at *4 (S.D.N.Y. Feb. 6, 2015) (granting summary judgment dismissing excessive force claim where plaintiff suffered fractured thumb while corrections officers installed shield on his cell to prevent his misbehavior); Robinson, 2014 WL 1257287, at *5 (granting summary judgment where force that officer used in "slamm[ing]" plaintiff's hand against wall during pat frisk was necessary given plaintiff's refusal to obey and could not "be characterized as wanton"). "It is not within the Court's province to write or advocate particular rules in the prison system," but rather, "to ensure that when an individual loses certain liberty interests as a penalty for committing offenses against society, that individual is not deprived of the 'concepts of dignity, civilized standards, humanity, and decency' that animate the Eighth Amendment." Beauvoir, 345 F. Supp. 3d at 370 (quoting Hudson, 503 U.S. at 12). Therefore, even if the Court were to conclude that the Individual Defendants "were chiding or bullying [Vasquez] more than was strictly necessary, their conduct did not egregiously depart from the aim of maintaining order, and it did not encroach the realm of violating

[Vasquez's] dignitary interests." <u>Beauvoir</u>, 345 F. Supp. 3d at 370. Therefore, the Court finds that this factor also weighs in favor of the Individual Defendants.

Fourth, evaluation of the need for force and the amount of force used "requires asking whether or not the measure taken inflicted disproportionate pain and suffering, and whether the force exposed [Vasquez] to a 'sufficiently substantial risk of serious damage to his future health.'" <u>Beauvoir</u>, 345 F. Supp. 3d at 370 (quoting <u>Farmer</u>, 511 U.S. at 843). Here, the effects of the force the Individual Defendants used were minor, and "whatever force was applied, was not applied for long," such that this factor weighs in favor of the Individual Defendants. <u>Beauvoir</u>, 345 F. Supp. 3d at 371.

Fifth, considering the threat the Individual Defendants reasonably perceived, the Court notes that although they reasonably believed that Vasquez had caused a disturbance in D-Wing, he was not being violent or belligerent, and therefore posed only a minimal threat of physical harm to any corrections officers or other inmates. At most, he posed "a modest threat of disorder in an environment where he had no right to do so and where maintenance of civility and discipline is of utmost importance." <u>Beauvoir</u>, 345 F. Supp. 3d at 371. The Court therefore finds that this factor weighs only slightly in favor of the Individual Defendants.

Sixth and finally, the Court inquires whether the Individual Defendants made any "good-faith efforts to temper the severity of the situation before resorting to a forceful response." <u>Beauvoir</u>, 345 F. Supp. 3d at 371. Vasquez testified that, in response to his questions about whether the search dog had touched any of his belongings, at least one officer said "okay," in an apparent acknowledgement of his question. (ECF No. 97-10 at 36). After the crackers were kicked out of his cell—Vasquez testified it was another inmate, but the officers reasonably

believed it to be Vasquez—the Individual Defendants handcuffed him, removed him from D-Wing, and transported him to the segregated cell.  (Id. at 39).  While reasonable minds might disagree about whether the officers could have done more to assuage Vasquez's concerns about the dog, as set forth above, it is not the place of this Court to second-guess the Individual Defendants' decision about how to maintain order in the circumstances here.  See Hudson, 503 U.S. at 6 (explaining that "prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve the internal order and discipline and to maintain institutional security").  Therefore, this factor is at most neutral in the Court's analysis.

Having taken into consideration the six factors above in the subjective test for an excessive force claim, the Court finds that the undisputed facts indicate that the Individual Defendants "did not have the requisite culpable state of mind," and that "there is no other fact on the record that could allow a jury to find a mens rea of deliberate indifference, recklessness, or knowing willingness of a serious risk of harm."  Beauvoir, 345 F. Supp. 3d at 372.

### b.  Objective test

The objective test focuses on the harm to Vasquez in light of "'contemporary standards of decency,'" and asks "whether the alleged violation is 'sufficiently serious' to warrant Eighth Amendment protections."  Beauvoir, 345 F. Supp. 3d at 372 (quoting Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009) and Blyden, 186 F.3d at 262).  As explained above, the injuries Vasquez describes are of a de minimis character comparable to those other courts have rejected as insufficient to support a Section 1983 excessive force claim.  Peters v. Huttel, 15 Civ. 9274 (NSR), 2019 WL 6619602, at *13 (S.D.N.Y. Dec. 5, 2019) (finding that undisputed evidence showed that

gate closure that struck plaintiff's shoulder leaving no visible injuries and only "tender[ness] to touch" was not a "sufficiently serious use of force"); Cox, 248 F. Supp. 3d at 485–86 (finding that officer who "slammed [the inmate] into bunk beds, pulled his right arm behind his back, pushed his fact towards a wall, and shoved him into two lockers" causing superficial abrasions and no lasting injuries did not violate Eighth Amendment); Perry v. Stephens, 659 F. Supp. 2d 577, 582 (S.D.N.Y. 2009) (finding that slap that caused "a little bruise" and "minor pain" that abated after a few days were not sufficiently serious or harmful injuries "to reach constitutional dimensions"); James, 2008 WL 1700125, at *4–5 (finding that "shov[ing]" plaintiff into a cell door, causing a swollen chin and bruised knee did not constitute excessive force); Kalwasinski v. Artuz, No. 02 Civ. 2582 (LBS), 2003 WL 22973420, at *4 (S.D.N.Y. Dec. 18, 2003) (finding that a bump and swelling on the head, headaches, scratches, bruises, and abrasions, resulting from a push to floor were "at most minor and superficial" and did not violate Eighth Amendment); Warren v. Westchester Cty. Jail, 106 F. Supp. 2d 559, 569 (S.D.N.Y. 2000) (finding that a push and two punches did not constitute excessive force).

Even if, when viewed in the light most favorable to Vasquez, the Individual Defendants' conduct "may not appear entirely professional," their actions were not "sufficiently serious to amount to a constitutional violation." D'Attore, 2013 WL 1180395, at *6 (granting summary judgment where plaintiff suffered de minimis injury as a result of his wheelchair being pushed "recklessly" in a hallway). "Where, as here, a plaintiff alleges only a degree of roughness that is common in prison contexts, and has not claimed a lasting or even fleeting injury resulting from the defendant's conduct, courts in this circuit have routinely held that such conduct is insufficiently serious to support an Eighth Amendment claim." Vogelfang v. Capra, 889 F. Supp.

2d 489, 507 (S.D.N.Y. 2012). Comparing Vasquez's alleged injuries to these precedents, the Court finds that "no reasonable jury could reach any other conclusion" than that the force the Individual Defendants used "was such a grave departure from 'contemporary standards of decency' or that [Vasquez's] injur[ies] [were] serious enough to invite an Eighth Amendment violation." Peters, 2018 WL 6619602, at *13; Beauvoir, 345 F. Supp. 3d at 372. Accordingly, the Court finds that the Individual Defendants are entitled to summary judgment in their favor on Vasquez's excessive force claim.

### c. **Qualified immunity**

The Individual Defendants argue that even if the Court were to find a genuine issue of material fact as to whether they used excessive force, qualified immunity protects them from liability. (ECF No. 99 at 15–18). "Qualified immunity protects government officials performing discretionary functions, such as arrests, 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Berman v. Williams, No. 17 Civ. 2757 (JGK), 2019 WL 4450810, at *7 (S.D.N.Y. Sept. 17, 2019) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see Malley v. Briggs, 475 U.S. 335, 341 (1986) ("As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law.") "Requiring the alleged violation of law to be clearly established balances the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Wood v. Moss, 572 U.S. 744, 758 (2014) (internal citations omitted).

A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001) (citation omitted), overruled on other grounds, Pearson v. Callahan, 555 U.S. 223 (2009); see Mullenix v. Luna, 136 S. Ct. 305, 309 (2015) (per curiam) (right is clearly established when "existing precedent place[s] the conclusion that [the defendant] acted unreasonably in the[] circumstances beyond debate"); McKay v. City of New York, 32 F. Supp. 3d 499, 506 (S.D.N.Y. 2014); Berman, 2019 WL 4450810, at *7. In evaluating whether the law was clearly established, "the salient question … is whether the state of the law" at the time of the defendant's conduct "gave [the defendant] fair warning that [his] alleged treatment of [the plaintiff] was constitutional." Hope v. Pelzer, 536 U.S. 730, 741 (2002). "If the state of the law at the time of the defendant's conduct did not give fair warning that such conduct was unlawful, then the defendant is entitled to qualified immunity." Jones v. Muniz, 349 F. Supp. 3d 377, 383 (S.D.N.Y. 2018). The "clearly established law must be particularized to the facts of the case." White v. Pauly, 137 S. Ct. 548, 552 (2017) (per curiam) (internal citation omitted). "The dispositive question is whether the violative nature of particular conduct is clearly established . . . in light of the specific context of the case, not as a broad general proposition." Mullenix, 136 S. Ct. at 308 (internal citations omitted). A case presenting the exact same facts is not required, see Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011), but the right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix, 136 S. Ct. at 308.

Law enforcement officers may be entitled to qualified immunity even if they have used excessive force. See, e.g., Hunter v. Bryant, 502 U.S. 224, 227 (1991) ("Even law enforcement

officials who reasonably but mistakenly conclude that [their conduct is lawful] are entitled to immunity."); <u>Stephenson v. Doe</u>, 332 F.3d 68, 77 (2d Cir. 2003) (Supreme Court precedent is "clear that even officers who are found to have used excessive force may be entitled [to] qualified immunity . . ."). Because an inmate's right to be free from excessive force is a clearly established right, the relevant qualified immunity inquiry is whether a reasonable officer in the position of the Individual Defendants would have known that their conduct constituted excessive force. <u>See Green v. Montgomery</u>, 219 F.3d 52, 59 (2d Cir. 2000) ("It is beyond dispute that the right to be free from excessive force has long been clearly established."). As set forth above, the Court finds that the Individual Defendants are entitled to summary judgment on the excessive force claim because the Individual Defendants have shown "that no reasonable jury, viewing the evidence in the light most favorable to [Vasquez], could conclude that [their] actions were objectively unreasonable in light of clearly established law." <u>O'Brien v. Barrows</u>, 556 F. App'x 2, 4 (2d Cir. 2014) (affirming grant of summary judgment for defendants dismissing excessive force claim on qualified immunity grounds). Because Vasquez has not established a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." <u>Saucier</u>, 533 U.S. at 201 (2001), <u>modified by</u> <u>Pearson</u>, 555 U.S. at 236 (2009); <u>see</u> <u>Blandon v. Capra</u>, No. 17 Civ. 65 (KMK), 2017 WL 5624276, at *12 n.19 (S.D.N.Y. Nov. 20, 2017) (where plaintiff failed to state a claim under Eighth and Fourteenth Amendments, qualified immunity analysis was unnecessary); <u>Toliver v. City of New York</u>, No. 10 Civ. 5803 (LTS), 2012 WL 6013098, at *8 (S.D.N.Y. Dec. 3, 2012) (where summary judgment was granted to certain individual defendants, qualified immunity inquiry was unnecessary).

Furthermore, even if "reasonable corrections officers could have disagreed as to the constitutionality" of the force the Individual Defendants used in this case, they would still be entitled to the protection of qualified immunity. See Ross v. Corr. Officers John and Jane Does 1–5, 610 F. App'x 75, 78 (2d Cir. 2015) (summary order) (holding that corrections officer was entitled to qualified immunity where "reasonable corrections officers" could have disagreed about the constitutionality of his conduct). As the Second Circuit has explained, "if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate." Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995) (explaining that "the ultimate legal determination whether . . . a reasonable [] officer should have known he acted unlawfully is a question of law better left for the court to decide"). For the reasons set forth above, "'no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, [Vasquez], could conclude that it was objectively unreasonable for the [Individual Defendants]' to believe that [they] were acting in a fashion that did not clearly violate an established federally protected right." Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987) (quoting Halperin v. Kissinger, 807 F.2d 180, 189 (D.C. Cir. 1986)); see Jenkins v. Medert, No. 16 Civ. 1491 (MAD/DJS), 2018 WL 5728050, at *5 (N.D.N.Y. July 2, 2018) (holding that, even if a question of fact existed as to the amount of force used, qualified immunity applied because "no reasonable corrections officer" could have known that the force used "was objectively unreasonable under the circumstances"). Given the absence of a dispute about the material facts in this case, the Court concludes that the Individual Defendants' conduct is

reasonable under the circumstances such that they are entitled to qualified immunity as to Vasquez's excessive force claim.  See Lennon, 66 F.3d at 421.

### 3. Deliberate indifference claim

The claim of a convicted prisoner, like Vasquez, that corrections officers were deliberately indifferent to his medical needs "is analyzed under the Eighth Amendment because the right [he] seeks to vindicate arises from the Eighth Amendment's prohibition of cruel and unusual punishment."  Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009) (internal citations omitted), overruled on other grounds, Darnell, 849 F.3d at 35; Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (inmate must demonstrate "'deliberate indifference to [his] serious medical needs'") (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)); Thomas, 2012 WL 3758457, at *10.  "[N]ot every lapse in medical care is a constitutional wrong."  Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006).  To establish a deliberate indifference claim, Vasquez must satisfy a two-prong test: (1) that "he suffered a sufficiently serious constitutional deprivation," and (2) that the Defendants "acted with deliberate indifference."  Taylor v. Goorde, 548 F. App'x 696, 698 (2d Cir. 2013); Feliciano v. Anderson, No. 15 Civ. 4106 (LTS) (JLC), 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017).

### a. Objective element

The first, or "objective" prong of a deliberate indifference claim "asks whether the deprivation of medical care was sufficiently serious."  Feliciano, 2017 WL 1189747, at *9.  This prong itself has two components.  First, the Court must evaluate whether Vasquez "'was actually deprived of adequate medical care,' keeping in mind that only 'reasonable care' is required."  Barnes v. Ross, 926 F. Supp. 2d 499, 505 (S.D.N.Y. 2013) (quoting Salahuddin, 467 F.3d at 279).

"'[P]rison officials who act reasonably'" in response to an inmate's health risk "'cannot be found liable.'" Salahuddin, 467 F.3d at 279–80 (quoting Farmer, 511 U.S. at 845). Second, the Court inquires "whether the inadequacy in medical care is sufficiently serious," i.e., "one that may produce death, degeneration, or extreme pain." Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005) (internal citation omitted). "[I]n cases of delayed or inadequate care, 'it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant.'" Sledge v. Fein, No. 11 Civ. 7450 (PKC), 2013 WL 1288183, at *5 (S.D.N.Y. Mar. 28, 2013) (quoting Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003)).

### i. Adequate care

In analyzing the objective element of a deliberate indifference claim, the Court first looks to "whether the prisoner was actually deprived of medical care." Barnes, 926 F. Supp. 2d at 505. "Adequate care is 'reasonable care' such that 'prison officials who act reasonably cannot be found liable.'" Martinez v. Aycock-W., No. 12 Civ. 4574, 2016 WL 407294, at *5 (S.D.N.Y. Feb. 1, 2016) (quoting Farmer, 511 U.S. at 845). Vasquez does not name as defendants any medical professionals at the Jail, and thus the Court interprets his claim as alleging that the Individual Defendants were deliberately indifferent to his medical needs and prevented him from timely receiving medical care.

The record here demonstrates that Vasquez received adequate care and the nurse and doctor who treated him "acted reasonably, which is all that is required under the Eighth Amendment." Cruz v. Corizon Health Inc., 13 Civ. 2563 (CS), 2016 WL 4535040, at *5 (S.D.N.Y. Aug. 29, 2016); see Figueroa, 2015 WL 505406, at *5 (finding no deliberate indifference where

inmate was immediately x-rayed and given painkiller after incident for which he suffered non-displaced thumb fracture). The infirmary records show that Vasquez saw the nurse twice—once within an hour of arriving in the segregated cell, and again later that day. (ECF Nos. 97-8 at 71–72; 101 ¶ 29). After observing "no visual injuries," she gave Vasquez Tylenol and put him on the sick call list to see a doctor on his next visit, finding "no reason" for him to see an external doctor. (ECF No. 97-8 at 72.) Vasquez did not receive any treatment for the minor scratches on his chest, which healed on their own. (ECF No. 97-10 at 86–87). Vasquez also twice saw the Jail's doctor, who two days after the incident observed "tenderness" and a decreased range of motion in Vasquez's neck, for which he prescribed a four-day regimen of Motrin and Flexeril. (ECF No. 97-8 at 57, 72). By the time Vasquez saw the doctor again on July 25, he did not make any complaints about injuries enduring from the July 14 incident. (ECF No. 97-8 at 69).

Essentially, Vasquez's claim rests on his disagreement with the medical professionals who treated him about whether he had a concussion that warranted further examination and treatment. (ECF Nos. 97-10 at 75). Such a complaint, however, is not cognizable under the Eighth Amendment. See Berman, 2019 WL 4450810, at *7 (granting summary judgment dismissing claim of inadequate medical care where plaintiff was "immediately" taken to medical clinic, seen, and treated and medical records disproved plaintiff's claim that defendants failed to provide medical care "such that no reasonable jury could find in plaintiff's favor"); Feliciano, 2017 WL 1189747, at *11 (finding plaintiff who was examined and given painkiller within two hours of incident failed to establish deprivation of adequate medical care); Estevez v. City of New York, No. 16 Civ. 073, 2017 WL 1167379, at *5 (S.D.N.Y. Mar. 28, 2017) (dismissing claims of inadequate medical care where doctors "promptly treated" plaintiff); Figueroa, 2015 WL 505406, at *5

(finding no deliberate indifference where an inmate immediately received treatment from nurse, who x-rayed him and gave him a painkiller for a minor finger fracture, for which he felt pain for 1.5 weeks). Even if the doctor and nurse misdiagnosed symptoms of a concussion, the Court finds that their diagnoses were reasonable based on the information before them, and does not give rise to liability under the Eighth Amendment. See Feliciano, 2017 WL 1189747, at *12 (finding that plaintiff's "disagreement with the medical professionals caring for him is insufficient to demonstrate that he suffered a serious deprivation of medical care"); Cruz 2016 WL 4535040, at *5 (granting summary judgment dismissing a deliberate indifference claim where the doctor's diagnosis "was reasonable based on the statistical information available to him"); Idowu v. Middleton, No. 12 Civ. 1238, 2013 WL 4780042, at *7 (S.D.N.Y. Aug. 5, 2013) (holding that "alleged misdiagnosis" did not constitute deprivation of adequate medical care).

### ii. Sufficiently serious condition

The Court also finds that Vasquez has failed to establish the second inquiry under the objective prong, that his injuries were sufficiently serious, i.e., "that the alleged deprivation of proper care created such a condition of urgency that it might have produced 'death, degeneration, or extreme pain.'" Cruz, 2016 WL 4535040, at *6 (quoting Johnson, 412 F.3d at 403) (internal citation omitted). Vasquez's alleged injuries amounted to a headache and vomiting, neck tenderness, and scratches on his chest. (ECF No. 97-8 at 57, 69, 71–72). There is no evidence in the record that he suffered any bumps or cuts on his head or neck. All of the symptoms appeared to dissipate within a month, and Vasquez admitted that the scratches healed on their own. (ECF Nos. 97-8 at 57, 69, 72; 97-10 at 86–87; 97-12 at 53). The evidence in the record fails to establish that these injuries were sufficiently serious. See Feliciano, 2017 WL

1189747, at *11 (finding that plaintiff's headaches were not "life-threatening and fast-degenerating"); Figueroa, 2015 WL 505406, at *5 (granting motion for summary judgment dismissing deliberate indifference claim where nondisplaced thumb fracture that caused swelling and pain for less than two weeks was not "sufficiently serious"). Accordingly, the Court finds that Vasquez has failed to establish a basis on which a rational jury could find that his alleged deprivation of medical treatment resulted in a condition of urgency or extreme pain as is required to sustain an Eighth Amendment claim.

### b. Subjective element

The second, mens rea or mental-element prong of a deliberate indifference claim requires an inmate plaintiff to prove "that the charged official acted with a sufficiently culpable state of mind." Cruz, 2016 WL 4535040, at *4 (citing Salahuddin, 467 F.3d at 280–81). This state of mind "more closely resembles recklessness as the term is used in the civil context, which does not require the defendant to be subjectively aware of the harm resulting from his acts or omissions." Feliciano, 2017 WL 1189747, at *13. "[A] defendant possesses the requisite mens rea when he acts or fails to act under circumstances in which he knew, or should have known, that a substantial risk of serious harm" would result. Id. (citing Darnell, 849 F.3d at 35). Vasquez must establish that the Defendants' "actions [were] more than merely negligent." Darnell, 849 F.3d at 36; Salahuddin, 467 F.3d at 280; Feliciano, 2017 WL 1189747, at *13. Thus, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim." Estelle, 429 U.S. at 106. Similarly, "[i]t is well-established that [neither] mere disagreement over the proper treatment," Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998), nor "[m]edical malpractice . . . become a constitutional violation merely because the victim is a

prisoner." Estelle, 429 U.S. at 106; see Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F.

Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques . .

. . forms of treatment, or the need for specialists or the timing of their intervention, are not

adequate grounds for a Section 1983 claim."). To prove an Eighth Amendment claim, an inmate

"must demonstrate that the defendants act[ed] or fail[ed] to act while actually aware of a

substantial risk that serious inmate harm w[ould] result." Farid v. Ellen, 593 F.3d 233, 248 (2d

Cir. 2010) (internal citations omitted). Prison officials are not liable under Section 1983 "if they

responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S.

at 844.

The Court finds that Vasquez has failed to demonstrate facts that any of the Individual

Defendants or the medical professionals who treated him acted with deliberate indifference to

his health. As set forth above, a nurse examined and treated Vasquez twice on the day of the

incident, the first time within an hour of his arrival in the segregated cell after the incident. (ECF

No. 97-8 at 71). The Jail's doctor examined him twice and prescribed medications for his

symptoms. (ECF No. 97-8 at 57, 69). There is no evidence that any of the Individual Defendants

delayed or limited Vasquez's access to examination and treatment. As explained above, that

Vasquez disagrees with the diagnoses and treatment he was provided does not give rise to

liability for deliberate indifference under the Eighth Amendment. See Cruz 2016 WL 4535040, at

*5 (granting summary judgment dismissing deliberate indifference claim where doctor's

diagnosis "was reasonable based on the statistical information available to him"); Idowu, 2013

WL 4780042, at *7 (holding that "alleged misdiagnosis" did not constitute deprivation of

adequate medical care).

Having failed to establish either the subjective or the objective elements of a deliberate indifference claim, the Court concludes that Vasquez has failed to demonstrate a genuine issue of material fact, and the Individual Defendants are entitled to summary judgment dismissing his Eighth Amendment claim.

### 4. **Municipal liability**

A municipality such as the County of Rockland may be sued directly for constitutional violations under Section 1983, Monell, 436 U.S. at 690, but cannot be held liable for acts of its employees "by application of the doctrine of respondeat superior." Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986); Byrd, 2018 WL 259316, at *9 n.13 (collecting cases rejecting respondeat superior as a basis for municipal liability under Section 1983); Cruz, 2016 WL 4535040, at *8. Claims based on a violation of Monell do not "create a stand-alone cause of action under which a plaintiff may sue over governmental policy, regardless of whether he suffered an infliction of a tort resulting from the policy." Askins, 727 F.3d at 253. Therefore, Vasquez's claim based on "municipal liability under Monell cannot survive without an underlying constitutional violation." Blue, 2018 WL 1136613, at *18. Because each of Vasquez's claims against the Individual Defendants fails, he has not established a basis on which the County of Rockland bears liability. See id.; Frost v. City of New York, No. 15 Civ. 4843 (NRB), 2019 WL 1382323, at *2 (S.D.N.Y. Mar. 27, 2019) (granting summary judgment dismissing municipal liability claims where underlying constitutional claims were dismissed); Byrd, 2018 WL 259316, at *13 (same); Cruz, 2016 WL 4535040, at *9 (same). Even if he had established that the Individual Defendants' conduct equated to a constitutional violation, Vasquez has proffered no evidence to show that any of their conduct occurred pursuant to a County of Rockland policy or practice. See City of Oklahoma

City v. Tuttle, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy[] [that] can be attributed to a municipal policymaker."); Mitchell v. City of New York, 841 F.3d 72, 80 (2d Cir. 2004) (affirming summary judgment dismissing municipal liability claim).

## IV.    CONCLUSION

For the reasons set forth above, the Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 is GRANTED in its entirety and all of Vasquez's claims are dismissed. The Clerk of the Court is respectfully directed to close this case.

I further decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), as Vasquez has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Clerk of Court is respectfully directed to mail a copy of this Opinion and Order to the address below.

Dated:      New York, New York
            February 24, 2020

SARAH L. CAVE
United States Magistrate Judge

MAIL TO:    Kim Vasquez
            4114 Ashmere Circle
            Dumfries, VA  22025